(No. 95135.—)

## THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. NAKIA HERRON, Appellee.

*Opinion filed May 19, 2005.*

James E. Ryan and Lisa Madigan, Attorneys General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers and Linda D. Woloshin, Solicitors General, and Linda D. Woloshin, Assistant Attorney General, of Chicago, and Renee G. Goldfarb, Peter D. Fischer, Susan Schierl Sullivan, Veronica Calderon Malavia and Annette Collins, Assistant State's Attorneys, of counsel), for the People.

Edwin A. Burnette, Public Defender, of Chicago (Lester Finkle and Brenton Williams, Assistant Public Defenders, of counsel), for appellee.

JUSTICE FITZGERALD delivered the opinion of the court:

The defendant, Nakia Herron, was convicted of first degree murder and armed robbery in the circuit court of Cook County. In his direct appeal, he raised one issue: whether the trial court improperly instructed the jury about eyewitness identification testimony. The defendant did not object to this instruction at trial and did not mention this instruction in his posttrial motion. The appel-

late court addressed this issue under the plain-error doctrine, reversed his convictions, and remanded for a new trial. No. 1—01—3889 (unpublished order under Supreme Court Rule 23). The State appealed.

The central issue in this case is what constitutes plain error, or more specifically, what standard a reviewing court should use in deciding whether to excuse procedural default of an issue on appeal. The State challenges the continued viability of the "closely balanced evidence prong" of our traditional two-part test for plain error and asks us to adopt the four-part test used by federal courts. For the reasons that follow, we decline the State's invitation and affirm.

## BACKGROUND

On the afternoon of October 22, 1996, two men wearing dark jeans and pullover "hoodies" entered the lobby of the Ramada Inn on South Lake Shore Drive in Chicago. According to Angela Eiland, the hotel's front desk supervisor, one man was around six feet tall, and the other man was shorter, "probably around five-five." Though the hoods covered their foreheads, Eiland observed that the taller man had a missing tooth; the shorter man had a darker complection and an unshaven face. Eiland asked if she could help them, and the shorter man said, "[G]ive me the money." He jumped over the counter with a gray cotton bag, while the taller man pointed a gun at her. Eiland opened the register, and the shorter man grabbed the money and proceeded toward the back office just as Lisa Brooks, hostess of the hotel restaurant, was leaving the office. The shorter man grabbed Brooks and pulled her back into the office. The taller man kept the gun pointed at Eiland.

Robert Comanse, the hotel's front office manager, heard a commotion and left his office, which was adjacent to the back office, to investigate. When he entered the back office, he saw the shorter man holding Brooks' arm.

Comanse later described the shorter man as 5 foot 10 or 11 inches tall with spotty facial hair. As Comanse walked by Brooks on his way to the lobby, Brooks told Comanse that the man was a robber. Comanse, close enough to the man to smell his breath, laughed. The man put a gun in his face and said, "[T]his is real. It's a real gun." He ordered Comanse, Brooks, Linette Harkins, the hotel's reservation agent, and Marlynn Moore, the hotel's switchboard operator, to lie facedown on the floor. The shorter man demanded, "[W]here's the money?" Comanse answered that there was no money in the office; the rest of the hotel's money was locked in a safe downstairs.

Outside the lobby Robert Priester, the hotel's assistant general manager and director of security, was waiting to accompany Brooks with her "bank" money to open the restaurant. Priester entered the lobby and approached Eiland to determine why Brooks was delayed. The taller man backed away from the desk, and Eiland mouthed the words to Priester that the hotel was being robbed. Priester turned toward the taller man and asked what he was doing. A struggle ensued. The taller man shouted, "[T]hey got me, G," and a gunshot rang through the lobby. Priester slumped down, bleeding from his neck. The two men fled. Outside, Dr. Terry Van Den Hok saw two men, both around six feet tall and wearing hoods, run from the hotel toward a parked car. Eiland ran to the back office and found Brooks, Harkins, Moore, and Comanse, lying on the floor. Eiland instructed them to call 911. She found some towels to help stop Priester's bleeding. He died within hours at Northwestern Memorial Hospital.

Fifteen months later, the police investigation of the shooting led to James Brisbon. After interviewing Brisbon, the police hunted for the defendant and Kenneth Durant. On January 27, 1998, the defendant voluntarily

came to the police station to participate in several lineups. Though Harkins and Moore could not identify anyone, the police still arrested the defendant. The next day, the defendant spoke with Chicago Police Detective Glen Turner on the way to the lockup. The defendant stated that he had gone to the hotel with Brisbon and another person, but that he stayed outside while Brisbon and the other person went inside. When Turner asked if the defendant wanted to talk about the robbery further, the defendant said no. On February 14, 1998, in another lineup, Eiland identified Durant as the taller man, but she did not identify the defendant as one of the robbers. Comanse alone identified the defendant.

At the conclusion of the defendant's trial, the parties discussed jury instructions. The following exchange occurred:

"Assistant State's Attorney: No. 10 is IPI Criminal No. 3.15.

The Court: That has all the points in it?

Assistant State's Attorney: Yes.

Defense Counsel: Okay. No objection, judge.

The Court: Given."

In its closing argument, the State previewed this instruction for the jury:

"Another law that the judge is going to instruct you on is the law of identification. When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence including, but not limited to, the following: The opportunity the witness had to view the offender at the time of the offense *or* the witness's degree of attention at the time of the offense *or* the witness's earlier description of the offender *or* the level of certainty shown by the witness when confronting the defendant *or* the length of time between the offense and the identification testimony." (Emphases added.)

The State then provided its summary of Eiland's identification of Durant and Comanse's identification of the defendant. The defense later provided its own summary of these identifications.

In instructing the jury, the trial court recited Illinois Pattern Instruction, Criminal, No. 3.15 (4th ed. 2000) (hereinafter IPI Criminal 4th), as follows:

"When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following:

The opportunity the witness had to view the offender at the time of the offense *or* the witness's degree of attention at the time of the offense *or* the witness's earlier description of the offender *or* the level of certainty shown by the witness when confronting the defendant *or* the length of time between the offense and the identification confrontation." (Emphases added.)

The jury found the defendant guilty of first degree murder and armed robbery, and the trial court sentenced him to concurrent terms of 55 years' imprisonment for murder and 25 years' imprisonment for robbery. The trial court denied the defendant's motion for a new trial, amended motion for a new trial, and motion to reconsider sentence.

The defendant appealed, arguing that the trial court erred in its reading of IPI Criminal 4th No. 3.15. Specifically, the defendant charged that the trial court's use of the word "or" between the listed factors signaled that the jury could find an eyewitness' testimony reliable based on a single factor. The defendant acknowledged that he did not object to the instruction at trial or in a posttrial motion. Instead, he argued that the appellate court should consider this forfeited issue under the plain-error doctrine.

The appellate court reversed the defendant's conviction and sentence and remanded for a new trial. The appellate court stated:

"Here, we find that the evidence against defendant was closely balanced and thus, this issue warrants review under the plain error analysis. The State's case was based almost solely on the testimony of Comanse and his identification of defendant. Comanse testified that he had never seen the

man before, but described him as five feet, ten inches or five feet, eleven inches tall wearing a black hooded sweatshirt covering his hair, but not his face. Comanse stated that he viewed the man's face for approximately 20 to 25 seconds before he complied with his demand and laid face down on the floor. Comanse first stated that he was looking down at the floor during their ensuing conversation, but later testified that he looked at the man while they talked. He viewed a photo lineup that day, but did not identify anyone. Nearly 16 months later, Comanse identified defendant from a lineup.

However, Comanse's description of the man who held a gun to him conflicted with Eiland's account. Eiland testified that the man was shorter than her, and was 'probably' five feet, five inches tall. Defendant was five feet, eleven inches tall. Although she saw both men enter the lobby and approach the front desk and helped the shorter man to open the cash drawer and take the money, Eiland never identified defendant. Additionally, the State's other three eyewitnesses could not identify defendant. Moreover, there was no physical evidence linking defendant to the crime. While defendant made a statement to Detective Turner, it was very vague and merely placed defendant at the hotel, but did not implicate him as the armed robber who held a gun to several employees and did not corroborate the witnesses' testimony. Moreover, the bulk of the State and defense closing arguments centered around the reliability of eyewitness identifications." No. 1—01—3889 (unpublished order under Supreme Court Rule 23).

Following *People v. Gonzalez*, 326 Ill. App. 3d 629 (2001), the appellate court held that the trial court erred in giving IPI Criminal 4th No. 3.15 with the "ors." The appellate court further held that this error was not harmless because the evidence was "closely balanced" and "not overwhelming" against the defendant. The appellate court reversed and remanded for a new trial.

We allowed the State's petition for leave to appeal. 177 Ill. 2d R. 315(a). On the legal issues in this appeal, our review is *de novo*. See *People v. Bracey*, 213 Ill. 2d 265, 270 (2004).

## ANALYSIS

Generally, a defendant forfeits review of any putative jury instruction error if the defendant does not object to the instruction or offer an alternative instruction at trial and does not raise the instruction issue in a posttrial motion. *People v. Reddick*, 123 Ill. 2d 184, 198 (1988), citing *People v. Thurman*, 104 Ill. 2d 326 (1984); *People v. Huckstead*, 91 Ill. 2d 536, 543 (1982); *cf. People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (*"Both* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial" (emphases in original)). The so-called waiver principle encourages the defendant to raise issues before the trial court, allowing the court to correct its own errors before the instructions are given, and consequently disallowing the defendant to obtain a reversal through inaction. See *People v. Roberts*, 75 Ill. 2d 1, 11 (1979); see also *People v. Ford*, 19 Ill. 2d 466, 478-79 (1960) ("An accused may not sit idly by and allow irregular proceedings to occur without objection and afterwards seek to reverse his conviction by reason of those same irregularities"); *Bruen v. People*, 206 Ill. 417 (1903).

Supreme Court Rule 451(c), however, provides that "substantial defects" in criminal jury instructions "are not waived by failure to make timely objections thereto if the interests of justice require." 177 Ill. 2d R. 451(c). Rule 451(c) crafts a limited exception to the general rule to correct "grave errors" and errors in cases "so factually close that fundamental fairness requires that the jury be properly instructed." *People v. Hopp*, 209 Ill. 2d 1, 7 (2004), citing *Thurman*, 104 Ill. 2d at 329-30; see *People v. Tannenbaum*, 82 Ill. 2d 177, 182 (1980). Rule 451(c) is coextensive with the "plain error" clause of Supreme Court Rule 615(a), and we construe these rules "identically." *People v. Armstrong*, 183 Ill. 2d 130, 151 n.3 (1998). Rule 615(a) provides: "Any error, defect, irregularity, or variance which does not affect substantial

rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill. 2d R. 615(a).

Well before we adopted Rule 615(a), Illinois courts recognized that forfeiture is a harsh sanction for a defendant whose attorney failed to raise an error before the trial court. Initially, we softened the blow by placing the blame on defense counsel and considering the error in a close case:

> "The fact that a person charged with crime is poorly defended will not justify a reversal of the judgment where it is reasonably supported by the evidence [citation] but *where the evidence is close,* \*\*\* and it is clear that the prosecuting attorney has taken advantage of the accused because he was poorly represented and the trial court has permitted such advantage to be taken, then we will consider the errors notwithstanding the failure to properly preserve the questions for review." (Emphasis added.) *People v. Gardiner,* 303 Ill. 204, 206-07 (1922).

We later reiterated:

> "*Where the case is close,* we will consider errors in the record notwithstanding the failure of counsel to save the questions for review, where it is clear that the court has permitted the prosecuting attorney to take advantage of the accused because he was poorly represented [citations] but we will not reverse a judgment of conviction which is manifestly and unquestionably right simply because counsel did not try the case as well as he should have." (Emphasis added.) *People v. Nowak,* 372 Ill. 381, 382 (1939).

Over time, our statements on forfeiture drifted from manifesting a concern with the quality of the defendant's representation to manifesting a broader concern with the overall fairness of the defendant's trial. In *People v. Burson,* 11 Ill. 2d 360, 370-71 (1957), we observed, " 'The court may, as a matter of grace, in a case involving deprivation of life or liberty, take notice of errors appearing upon the record which deprived the accused of

substantial means of enjoying a fair and impartial trial, although no exceptions were preserved or the question is imperfectly presented.' [Citations.]" See also *People v. Bradley*, 30 Ill. 2d 597, 601 (1964) ("In a criminal case in which the evidence is closely balanced this court has held that it may consider errors that have not been properly preserved for review"). We have intimated that plain error, while a nonconstitutional doctrine, has roots in the same soil as due process. See, *e.g.*, *People v. Green*, 74 Ill. 2d 444, 450 (1979), quoting *People v. Hamby*, 32 Ill. 2d 291, 294 (1965); see also *People v. Underwood*, 72 Ill. 2d 124, 130 (1978) (holding that the object of Rule 451(c)'s limited exception "is to insure that a defendant is not denied his right to a fair and impartial jury trial"). Fairness, in short, is the foundation of our plain-error jurisprudence.

A fair trial, however, is different from a perfect trial. See *People v. Bull*, 185 Ill. 2d 179, 214 (1998). The plain-error doctrine does not instruct a reviewing court to consider all forfeited errors. *People v. Pickett*, 54 Ill. 2d 280, 282 (1973). It is not "a general saving clause preserving for review all errors affecting substantial rights whether or not they have been brought to the attention of the trial court." *People v. Precup*, 73 Ill. 2d 7, 16 (1978). Rather, it is "a ' "narrow and limited exception to the general waiver rule" ' " (*People v. Hampton*, 149 Ill. 2d 71, 100 (1992), quoting *People v. Szabo*, 113 Ill. 2d 83, 94 (1986), quoting *People v. Pastorino*, 91 Ill. 2d 178, 188 (1982)), whose purpose is to protect the rights of the defendant and the integrity and reputation of the judicial process (see *People v. Howell*, 60 Ill. 2d 117, 121 (1975)).

As reflected in how we have framed this dual purpose of the plain-error doctrine, we are concerned with two ways in which the fairness of the defendant's trial can be compromised by unpreserved error. Thus, "[i]f the admis-

sion of evidence constitutes plain error resulting in a miscarriage of justice upon a defendant *or* a tainting of the integrity and reputation of the judicial process, then it is considered although such error was not brought to the attention of the trial court." (Emphasis added.) *People v. Baynes*, 88 Ill. 2d 225, 231 (1981); *People v. Carlson*, 79 Ill. 2d 564, 577 (1980); accord *People v. Williams*, 193 Ill. 2d 306, 348 (2000); *cf. People v. Stavrakas*, 335 Ill. 570, 583 (1929) ("It is not the practice of this court to reverse a judgment because some error may have been committed by the trial court, unless it appears that real justice has been denied thereby or that the verdict of the jury or the judgment of the court may have resulted from such error"). As we explained in *People v. Keene*, 169 Ill. 2d 1, 17-18 (1995):

"Rule 615(a) provides that if 'substantial rights' are not affected, any such claim 'shall be disregarded.' [Citation.] That language, this court has observed, mandates that '[b]efore plain error can be considered as a means of circumventing the general waiver rule, it must be plainly apparent from the record that an error affecting substantial rights was committed.' [Citation.] But the threshold concern is just as often as not whether the evidence presented was 'closely balanced.' The reason: the strength or weakness of inculpatory evidence has long been seen as relevant to ignoring procedural defaults in remedying occasioned injustice. [Citation.]

As a result, a disjunctive approach has evolved for determining the existence of plain error."

The plain-error doctrine, as it has developed in Illinois, allows a reviewing court to reach a forfeited error affecting substantial rights in two circumstances. First, where the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence, a reviewing court may consider a forfeited error in order to preclude an argument that an innocent person was wrongly convicted. See *People v. Mullen*, 141 Ill. 2d 394, 402 (1990), citing *Carlson*, 79 Ill.

2d at 576. Second, where the error is so serious that the defendant was denied a substantial right, and thus a fair trial, a reviewing court may consider a forfeited error in order to preserve the integrity of the judicial process. *Keene*, 169 Ill. 2d at 17; *Carlson*, 79 Ill. 2d at 576-77. See generally *People v. Vargas*, 174 Ill. 2d 355, 363 (1996). This so-called disjunctive test does not offer two divergent interpretations of plain error, but instead two different ways to ensure the same thing—namely, a fair trial.

The State highlights what it terms "broader problems that surround plain error law," all of which stem from the closely balanced evidence prong of the disjunctive test. According to the State, the closely balanced evidence prong improperly shifts the burden of persuasion from the defendant to the State to show the error was not prejudicial, effectively rendering the failure to preserve the error inconsequential. Here, according to the State, once the appellate court labeled the evidence as closely balanced, "a presumption of prejudice cloaked the case," and the State had to prove affirmatively that the putative jury instruction error did not affect the jury's verdict.

The State asks us to abandon the disjunctive test in favor of the four-part federal test outlined in *United States v. Olano*, 507 U.S. 725, 123 L. Ed. 2d 508, 113 S. Ct. 1770 (1993). Under the federal test, before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. See *United States v. Cotton*, 535 U.S. 625, 631, 152 L. Ed. 2d 860, 868, 122 S. Ct. 1781, 1785 (2002). If these conditions are met, an appellate court then may exercise its discretion and consider the error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. See

*Cotton*, 535 U.S. at 631-32, 152 L. Ed. 2d at 868, 122 S. Ct. at 1785.[1]

The State asserts that in *People v. Thurow*, 203 Ill. 2d 352 (2003), and *People v. Crespo*, 203 Ill. 2d 335 (2001), this court adopted the federal test, but inexplicably retreated to the disjunctive test in later cases. The State asserts that the harmless-error and plain-error clauses of Rule 615(a), read together, indicate that both preserved and unpreserved errors must be prejudicial before a reviewing court may reverse. The difference lies in who bears the burden of persuasion. According to the State, *Thurow* recognized this "subtle, but vital distinction."

In *Thurow*, the defendant was charged with involuntary manslaughter of a household member. The jury was instructed on the elements of simple involuntary manslaughter and found the defendant guilty. The trial court determined that the defendant was eligible for an enhanced sentence because the victim was a member of

---

[1]The State characterizes the disjunctive test as a mere exception to forfeiture principles, which authorizes a reviewing court to reach the merits of a forfeited claim, and the four-part federal plain-error test as a standard of review, which authorizes a reviewing court to remedy a forfeited claim. The State's terminology is at best imprecise.

The federal plain-error test is not a standard of review. The term "standard of review" denotes "[t]he criterion by which an appellate court *** measures *** the propriety of an order, finding, or judgment entered by a lower court." Black's Law Dictionary 1441 (8th ed. 2004). It refers to the stance that a reviewing court takes with respect to a trial court error, and is thus the wrong label in the context of plain error, where there is no trial court order to review. But see *People v. Bean*, 137 Ill. 2d 65, 80 (1990) ("Our standard of review on this issue is that of the plain error doctrine, for defendant did not raise this issue either through a trial objection or in his post-trial motion"). The plain-error test, in both its federal and state formulas, is more aptly described as a standard to help a reviewing court determine when to excuse forfeiture.

her household and sentenced her to eight years' imprisonment.

The appellate court held that the trial court's sentence violated *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 455, 120 S. Ct. 2348, 2362-63 (2000), which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Because the jury made no finding beyond a reasonable doubt that the victim was a member of the defendant's household, the appellate court vacated the defendant's sentence and remanded for a new sentencing hearing.

Before us, the State conceded that the defendant's enhanced sentence violated *Apprendi*, but argued that there was uncontested and overwhelming evidence that the victim was a member of the defendant's household. Thus, the State asked this court to find that the failure to submit this fact to the jury was harmless error. We noted that the United States Supreme Court had not determined whether an *Apprendi* violation could be harmless beyond a reasonable doubt, but we discussed *Cotton*, where the Court addressed "a similar question: whether an *Apprendi* violation to which there was no timely objection could be viewed as 'plain error.'" *Thurow*, 203 Ill. 2d at 362. We continued:

> "Though plain-error analysis normally requires the same kind of inquiry as does harmless-error review, there is an 'important difference' between the two. *United States v. Olano*, 507 U.S. 725, 734, 123 L. Ed. 2d 508, 520, 113 S. Ct. 1770, 1778 (1993). In a harmless-error analysis, which applies where, as in the case at bar, the defendant has made a timely objection, it is the State that 'bears the burden of persuasion with respect to prejudice.' *Olano*, 507 U.S. at 734, 123 L. Ed. 2d at 520, 113 S. Ct. at 1778. In other words, the State must prove beyond a reasonable doubt that the jury verdict would have been the same

absent the error. [Citations.] The situation is different under a plain-error analysis, which applies where the defendant has failed to make a timely objection. There, '[i]t is the defendant rather than the [State] who bears the burden of persuasion with respect to prejudice.' *Olano*, 507 U.S. at 734, 123 L. Ed. 2d at 520, 113 S. Ct. at 1778. 'In most cases, a court of appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial.' *Olano*, 507 U.S. at 734, 123 L. Ed. 2d at 520, 113 S. Ct. at 1778." *Thurow*, 203 Ill. 2d at 363.

In *Crespo*, we addressed a related *Apprendi* issue. There, the defendant was convicted of first degree murder, armed violence, and two counts of aggravated battery. The trial court sentenced him to a 75-year extended term of imprisonment on the murder conviction, finding that the crime was "brutal and heinous." After we disposed of the defendant's direct appeal, he argued for the first time in his rehearing petition that the extended-term sentence violated *Apprendi*.

We filed a supplemental opinion upon denial of rehearing. We noted that, though the parties framed the issue in terms of harmless error, the issue was one of plain error because the defendant did not object at trial. *Crespo*, 203 Ill. 2d at 347. As we did in *Thurow*, we observed that the two analyses differ on which party bears the burden of proof: "under plain-error analysis, a defendant's conviction and sentence will stand unless the defendant shows the error was prejudicial." *Crespo*, 203 Ill. 2d at 347-48. We then returned to *Cotton*, where the Supreme Court applied the plain-error test of Federal Rule of Criminal Procedure 52(a) to a forfeited claim. *Crespo*, 203 Ill. 2d at 348. We noted that the Court in *Cotton* assumed the defendant's substantial rights were affected by the *Apprendi* violation, but held that error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings because the government presented overwhelming evidence of guilt. See *Crespo*, 203 Ill. 2d at 348. We reached "the same conclusion

by the same reasoning." *Crespo*, 203 Ill. 2d at 348. Because the State presented overwhelming evidence that the murder was brutal and heinous, "there [was] no basis for concluding that the *Apprendi* violation 'seriously affected the fairness, integrity or public reputation of judicial proceedings.' " *Crespo*, 203 Ill. 2d at 348. In short, the defendant failed to show that the error was prejudicial; "the error did not rise to the level of plain error." *Crespo*, 203 Ill. 2d at 349.

In the wake of *Crespo,* some panels of the appellate court adopted the four-part federal plain-error test, in both *Apprendi* and non-*Apprendi* cases. See, *e.g.*, *People v. Sharp*, 355 Ill. App. 3d 786 (2005); *People v. Schickel*, 347 Ill. App. 3d 889 (2004); *People v. Coleman*, 347 Ill. App. 3d 266 (2004); *People v. Durgan*, 346 Ill. App. 3d 1121 (2004); *People v. Brooks*, 345 Ill. App. 3d 945 (2004); *People v. Alvarez*, 344 Ill. App. 3d 179 (2003); *People v. Lucas*, 342 Ill. App. 3d 58 (2003); *People v. Lee*, 342 Ill. App. 3d 37 (2003); see also *People v. Simmons*, 342 Ill. App. 3d 185 (2003) (applying the federal plain-error test to an *Apprendi* issue and the state plain-error test to non-*Apprendi* issues). And recently, during oral arguments in *People v. Johnson*, 208 Ill. 2d 53, 63 (2003), the State urged us "to abrogate our longstanding formulation of plain-error analysis and adopt the 'federal test,' as set forth in" *Olano.* We declined to address these arguments, noting that our disposition would have been the same under either the federal or state standard. *Johnson*, 208 Ill. 2d at 84.

Both the texts of the federal and state plain-error rules, as well as their interpretation by the United States and Illinois Supreme Courts, are similar. In 1946, the United States Congress enacted Federal Rule of Criminal Procedure 52, which provided:

"(a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

(b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed. R. Crim. P. 52.[2] The General Assembly copied this rule verbatim as section 121—9(a) of the Code of Criminal Procedure of 1963. See Ill. Rev. Stat. 1963, ch. 38, par. 121—9(a). That statute, and the federal rule, were consistent with our case law. See *People v. Le May*, 35 Ill. 2d 208, 212 (1966) ("This section *** is in accord with our prior practice where substantial error has arisen in a criminal trial"). The legislature eventually recognized this court's rule-making power and authorized the court to replace statutory provisions with supreme court rules. In 1966, this court copied the statute verbatim as Rule 615(a).

Further, the judicial gloss placed upon these rules is congruent. As the State concedes in its reply brief, "all four prongs of the federal test find root in Illinois law."

Both the federal and the state test require error. Compare *Olano*, 507 U.S. at 732, 123 L. Ed. 2d at 518, 113 S. Ct. at 1777, with *People v. Sims*, 192 Ill. 2d 592, 621 (2000) ("before invoking the plain-error exception, *** 'it is appropriate to determine whether error occurred at all' "), quoting *People v. Wade*, 131 Ill. 2d 370, 376 (1989).

Both the federal and the state test require that the error must be plain. Compare *Olano*, 507 U.S. at 734, 123 L. Ed. 2d at 519, 113 S. Ct. at 1777, with *Keene*, 169 Ill. 2d at 17 ("short of a conclusion that an asserted error is a 'plain' one, the so-called plain error doctrine offers no basis to excuse a procedural default").

Both the federal and the state test require that the

---

[2]Federal Rule of Criminal Procedure 52 was amended in 2002 "as part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules." Fed. R. Crim. P. 52, Advisory Committee Notes 2002 Amendments. Substantively, the rule did not change.

error must affect substantial rights. Compare *Olano*, 507 U.S. at 734, 123 L. Ed. 2d at 519, 113 S. Ct. at 1777, with *Keene*, 169 Ill. 2d at 16-17; *Precup*, 73 Ill. 2d at 17 ("Before plain error can be considered as a means of circumventing the general waiver rule, it must be plainly apparent from the record that an error affecting substantial rights was committed").

In *Olano*, the Court explained that the "substantial rights" requirement means "in most cases" that the error was prejudicial: "It must have affected the outcome of the [trial] court proceedings." *Olano*, 507 U.S. at 734, 123 L. Ed. 2d at 519, 113 S. Ct. at 1778. However, "[t]here may be a special category of forfeited errors that can be corrected regardless of their effect on the outcome," as well as errors that "should be presumed prejudicial if the defendant cannot make a specific showing of prejudice." *Olano*, 507 U.S. at 735, 123 L. Ed. 2d at 520, 113 S. Ct. at 1778. This should sound familiar. In Illinois, there are two categories of plain error: prejudicial errors—errors that may have affected the outcome in a closely balanced case—and presumptively prejudicial errors—errors that may not have affected the outcome, but must still be remedied. See *People v. Blue*, 189 Ill. 2d 99, 138 (2000), citing *Green*, 74 Ill. 2d at 455 (Ryan, J., specially concurring). Both deprive the defendant of substantial rights because both deprive the defendant of a fair trial.

Finally, both the federal and the state rule take into account the fairness, integrity, and public reputation of judicial proceedings. Compare *Olano*, 507 U.S. at 736, 123 L. Ed. 2d at 521, 113 S. Ct. at 1779, with *People v. Gard*, 158 Ill. 2d 191, 205 (1994).

In *Olano*, the Court explained that Rule 52(b) allows a reviewing court to exercise its discretion and notice a forfeited error " 'in those circumstances in which a miscarriage of justice would otherwise result' "—that is,

where the defendant is actually innocent. *Olano*, 507 U.S. at 736, 123 L. Ed. 2d at 521, 113 S. Ct. at 1779, quoting *United States v. Young*, 470 U.S. 1, 15, 84 L. Ed. 2d 1, 12, 105 S. Ct. 1038, 1046 (1985). But the Court acknowledged that plain error is not limited to cases where the putative error causes the conviction of an innocent person; it also applies to cases where the putative error affects the fairness or integrity of the trial. *Olano*, 507 U.S. at 736, 123 L. Ed. 2d at 521, 113 S. Ct. at 1779. Again, this should sound familiar. In Illinois, the closely balanced evidence prong of the plain-error test guards against errors that could lead to the conviction of an innocent person (see *Mullen*, 141 Ill. 2d at 402, citing *Carlson*, 79 Ill. 2d at 576), while the substantial rights prong guards against errors that erode the integrity of the judicial process and undermine the fairness of the defendant's trial (see *Keene*, 169 Ill. 2d at 17; see also *Blue*, 189 Ill. 2d at 138).

Contrary to the State's argument, the federal and state plain-error tests are neither "diametrically opposed" nor "fundamentally divergent." The rehearing petition in *Crespo* raised an issue of first impression on which we understandably sought guidance from a superior court that already had decided that issue. We did not adopt *Olano*. We simply referred to the plain-error standard in *Cotton* and *Olano*, because, at its core, it is the same standard we already use. Ultimately, plain error involves the same considerations in federal and state court. The differences between the federal and the state plain-error tests are a function of the common law process. Over time, different justices of different courts have added their idiosyncratic language to the case law, but changes in the language of plain error have not resulted in changes in the meaning of plain error.

We reiterate: the plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court

to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. In the first instance, the defendant must prove "prejudicial error." That is, the defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. The State, of course, can respond by arguing that the evidence was not closely balanced, but rather strongly weighted against the defendant. In the second instance, the defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. *Keene*, 169 Ill. 2d at 17. Prejudice to the defendant is presumed because of the importance of the right involved, *"regardless* of the strength of the evidence." (Emphasis in original.) *Blue*, 189 Ill. 2d at 138. In both instances, the burden of persuasion remains with the defendant. See *Thurow*, 203 Ill. 2d at 363; see also *Hopp*, 209 Ill. 2d at 12 (the plain-error rule requires the defendant to "show that the error caused a *severe* threat to the fairness" of the trial (emphasis in original)).

Here, the defendant argued before the appellate court that the trial court committed prejudicial error when, in a close case, it recited IPI Criminal 4th No. 3.15 without omitting the "ors." We will first decide whether the appellate court was correct in determining there was error because only if there was error can the defendant plausibly argue that the error prejudiced him in a close case. See *People v. Chapman*, 194 Ill. 2d 186, 226 (2000). We turn to the merits of the defendant's jury instruction argument.

The function of jury instructions is to convey to the jury the law that applies to the evidence presented. See *People v. Fuller*, 205 Ill. 2d 308, 343 (2002). Jury instruc-

tions should not be misleading or confusing (see *People v. Bush*, 157 Ill. 2d 248, 254 (1993)), but their correctness depends upon not whether defense counsel can imagine a problematic meaning, but whether ordinary persons acting as jurors would fail to understand them (*People v. Lozada*, 211 Ill. App. 3d 817, 822 (1991)).

IPI Criminal 4th No. 3.15, "Circumstances of Identification," provides:

> "When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following:
>
> ■ The opportunity the witness had to view the offender at the time of the offense.
>
> [or]
>
> ■ The witness's degree of attention at the time of the offense
>
> [or]
>
> ■ The witness's earlier description of the offender.
>
> [or]
>
> ■ The level of certainty shown by the witness when confronting the defendant.
>
> [or]
>
> ■ The length of time between the offense and the identification confrontation."

The committee note explains that this instruction simply lists factors, well established by case law, which offer guidance "in an area that contains complexities and pitfalls not readily apparent to some jurors." IPI Criminal 4th No. 3.15, Committee Note, at 107. The committee note directs judges to "[g]ive numbered paragraphs that are supported by the evidence" and advises, "The bracketed numbers are present solely for the guidance of court and counsel and should not be included in the instruction submitted to the jury." See IPI Criminal 4th No. 3.15, Committee Note, at 107.

Here, the appellate court relied upon *Gonzalez*. In *Gonzalez*, the trial court, as it did in this case, recited IPI Criminal 3d No. 3.15 with the word "or" between the

five factors. The defendant did not object to this instruction and did not raise it in his posttrial motion. The appellate court found the evidence was closely balanced and considered the issue as plain error. The appellate court examined the committee note for IPI Criminal 3d No. 3.15, which explains that the instruction was compiled from factors established in various cases. *Gonzalez*, 326 Ill. App. 3d at 638. The appellate court observed that these cases clearly state that all the factors should be considered and weighed in determining whether an identification is reliable. *Gonzalez*, 326 Ill. App. 3d at 639. Significantly, the cases use the word "and" between factors, indicating that the factors are not mutually exclusive. *Gonzalez*, 326 Ill. App. 3d at 639.

According to the appellate court, "the purpose of the Committee's use of '[or]' between the factors listed in IPI Criminal 3d No. 3.15 is to inform the user that 'only the particular *** factors that are supported by the evidence should be given.' " *Gonzalez*, 326 Ill. App. 3d at 639, quoting *People v. Lewis*, 165 Ill. 2d 305, 354 (1995). The appellate court determined that this interpretation is supported by the "User's Guide," which prefaces all the instructions, and states that a bracketed "or" requires the user to choose between alternative propositions supported by the evidence. *Gonzalez*, 326 Ill. App. 3d at 639, quoting IPI Criminal 4th, User's Guide, at IX. Further, IPI Criminal 4th Sample Set 27.02 does not contain the word "or" between the factors listed in its IPI Criminal 4th No. 3.15. *Gonzalez*, 326 Ill. App. 3d at 639-40, citing IPI Criminal 4th Sample Set 27.02, No. 3.15.

The appellate court stated:

"The trial court's incorporation of the term 'or' between each factor implies, as a matter of law, that the identification testimony of an eyewitness may be deemed reliable if just one of the five factors listed weighs in favor of reliability. The phrase preceding the five factors, stating that

'all the facts and circumstances in evidence' are to be considered, does not obviate the erroneous wording of the jury instruction. While an attorney may be able to resolve the court's instruction to 'consider all the facts and circumstances in evidence' with its use of the term 'or' between each factor, we doubt that an ordinary person acting as a juror could do the same." *Gonzalez*, 326 Ill. App. 3d at 640.

The State compounded this error by focusing the jury's attention on the word "or" during closing arguments. *Gonzalez*, 326 Ill. App. 3d at 640-41. The appellate court concluded that the instruction given to the jury was error, and that, because the evidence was close, this error was prejudicial: it "may have mistakenly led the jury to rely on but a single factor when deciding that the identification testimony presented was reliable." *Gonzalez*, 326 Ill. App. 3d at 341. But see *People v. Tisley*, 341 Ill. App. 3d 741 (2003) (holding that giving IPI Criminal 3d No. 3.15 with the bracketed "or" is not error); accord *People v. Smith*, 357 Ill. App. 3d 73 (2005).

The State disagrees with *Gonzalez*. According to the State, reading the "ors" in the instruction did not constitute error. The State contends that because its opening sentence directs the jury to consider all the facts and circumstances when it weighs identification testimony, IPI Criminal 4th No. 3.15 is not ambiguous. Moreover, claims the State, the factors in IPI Criminal 4th No. 3.15 are based on intuition: "It is a list of what reasonable people normally would take into account when evaluating a statement of identification in everyday life. *** [G]iven the commonsense nature of this instruction, it is hard to see how giving the instruction in the form it was given here could ever amount to error."

The State, however, ignores the committee note, which suggests that IPI Criminal 4th No. 3.15 was created to help jurors negotiate the hidden complexies of identification testimony. IPI Criminal 4th No. 3.15, Com-

mittee Note, at 106-07 ("The Committee believes this instruction would serve the interests of justice by offering guidance in an area that contains complexities and pitfalls not readily apparent to some jurors"). If the instruction initially directs jurors to consider all the facts and circumstances surrounding the identification, but then, through the use of the conjunction "or," directs jurors to consider one of five factors regarding the reliability of the identification, then the instruction contains an internal inconsistency. It is ambiguous and misleading, regardless of any further comment on it by the State in its closing argument.[3] We agree with the appellate court in this case and in *Gonzalez* that giving IPI Criminal No. 3.15 with the "ors" is indeed plain error.

We note that IPI Criminal No. 3.15 was changed in 2003, and the "ors" were removed. See IPI Criminal 4th No. 3.15 (Supp. 2003); see *People v. Jackson*, 348 Ill. App. 3d 719, 739 (2004) ("This new instruction is in accord with the well-settled principle that there are five factors that should be considered in determining the reliability of identification evidence"). Further, the committee note now informs judges, "The jury should be instructed on only the factors with any support in the evidence. Other factors should be omitted. Do not use 'or' or 'and' between the factors where more than one factor is used." IPI Criminal 4th No. 3.15, Committee Note, at 2 (Supp. 2003); see *People v. Waters*, 328 Ill. App. 3d 117, 131

---

[3]The State concedes, "the word 'or' in and of itself is ambiguous. As a matter of statutory construction, the word 'or' can be used exclusively meaning 'this or that, not both,' but it can also be used inclusively meaning 'this or that or both.' If both, the word 'or' is equivalent to the word 'and.' "

We disagree with the State that this supposed ambiguity in the meaning of "or" fixes the ambiguity of IPI Criminal 4th No. 3.15 as recited by the trial court. The word "or" is disjunctive. "Or" means "or." See Webster's Third New International Dictionary 1585 (1993).

(2002) (admonishing the trial court, "Upon retrial, if this instruction is given, the better approach would be to list the relevant factors supported by the evidence without using the conjunction 'or' ").

The question becomes whether the defendant has shown prejudice. The State argues that the defendant failed to prove the trial court's reading of IPI Criminal 4th No. 3.15 caused prejudice. The State faults the defendant for failing to identify the factors that the jury disregarded. According to the State, "the nature of the evidence presented to the jury and the arguments made by the prosecutors and defense counsel support the inference that the jury read and followed" IPI Criminal 4th No. 3.15. The jury learned that three of the four witnesses could not identify the defendant. "[N]aturally and necessarily," the State contends, the jury would examine the circumstances surrounding Comanse's identification. The State asserts that the appellate court engaged in pure conjecture and unfounded inference to conclude that the instruction confused and led the jury to rely on only one factor.

After *Gonzalez*, several other appellate court opinions have agreed that using the "ors" in IPI Criminal 4th No. 3.15 was plain error, but that the error was not prejudicial because the evidence was not closely balanced. See *People v. James*, 348 Ill. App. 3d 498 (2004); *People v. Carrero*, 345 Ill. App. 3d 1 (2003); *People v. Brookins*, 333 Ill. App. 3d 1076 (2002); *People v. Mercado*, 333 Ill. App. 3d 994 (2002); *People v. Furdge*, 332 Ill. App. 3d 1019 (2002); see also *People v. Smith*, 341 Ill. App. 3d 530, 546 (2003) (holding that the defendant could not raise this issue in a successive postconviction petition because he could not show prejudice). The appellate court here distinguished these cases, and determined that the error here was not harmless because "the evidence was closely balanced" and "not overwhelming," and consequently "the outcome

of this case may have been different had the jury been given a proper instruction." No. 1—01—3889 (unpublished order under Supreme Court Rule 23); accord *People v. Saraceno*, 341 Ill. App. 3d 108, 116 (2003); see also *People v. Briones*, 352 Ill. App. 3d 913 (2004) (holding that defense counsel's failure to object to IPI Criminal 4th No. 3.15 with the "ors" prejudiced the defendant).

We recently held that a jury instruction error rises to the level of plain error only when it "creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial." *Hopp*, 209 Ill. 2d at 8; *cf. Boyde v. California*, 494 U.S. 370, 380, 108 L. Ed. 2d 316, 329, 110 S. Ct. 1190, 1198 (1990) ("the proper inquiry *** is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence"). The seriousness of the risk depends upon the quantum of evidence presented by the State against the defendant. The defendant need not prove that the error in the instruction actually misled the jury. If the defendant carries the burden of persuasion and convinces a reviewing court that there was error and that the evidence was closely balanced, the case is not cloaked with a presumption of prejudice. The error is actually prejudicial, not presumptively prejudicial. We deal with probabilities, not certainties; we deal with risks and threats to the defendant's rights. When there is error in a close case, we choose to err on the side of fairness, so as not to convict an innocent person.

Here, Comanse was the only witness who could identify the defendant as one of the robbers, but his physical description of the shorter man conflicted with Eiland's description. The case, then, turned on the credibility of Comanse's identification testimony, and the erroneous jury instruction involved how the jury should

weigh such identification testimony. The effect of the error was not uncertain. The defendant proved that the trial court's error in reading IPI Criminal 4th No. 3.15 with the "ors" was prejudicial. The jury's verdict may have been different with a different instruction, and the appellate court correctly reversed his convictions and remanded for a new trial.

## CONCLUSION

For the reasons that we have discussed, we affirm the judgment of the appellate court.

*Affirmed.*