THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BENJAMIN S. HEAD, Defendant-Appellant.

Third District   No. 3—03—0606

Opinion filed June 7, 2005.

Jay Wiegman, of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Lawrence M. Bauer and Sab-

rina S. Henry, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SCHMIDT delivered the opinion of the court:

Defendant Benjamin S. Head was convicted of home invasion and violation of an order of protection (720 ILCS 5/12—11(a)(1), 12—30(a)(1) (West 2002)). He was sentenced to time served in jail prior to the imposition of sentence for violating the order of protection and 20 years' imprisonment for home invasion. Defendant appeals, arguing only that his 20-year sentence was excessive. We affirm.

Evidence at trial established that in the summer of 2002, defendant's former girlfriend, Lauretta Massey, and her two children, three-year-old Treyquan and six-year-old Isaiah, lived in an apartment at 611 Northeast Washington in Peoria, Illinois. In July 2002, Massey obtained a plenary order of protection requiring defendant to stay away from her and her children.

Massey testified that she and her children were sleeping in the living room on the first floor of their apartment at approximately 5 a.m., when she was awakened by defendant, who was tapping her arm. Defendant held a knife in each hand. Massey testified that the knives belonged to her and that defendant had retrieved them from her kitchen. Defendant told her that he had been watching her sleep for one hour and that he intended to kill her. Massey talked with defendant while she searched her couch cushions for her "911 phone." Defendant warned her that if she awakened the children, he would kill them. He asked her whether she wanted to die by knife or by gun, and then walked into the kitchen, where she thought he was retrieving something from his coat.

Massey told defendant that she wanted to go to the bathroom. He followed her upstairs and stood by the hallway bannister while she went into the bathroom. When Massey came out of the bathroom, defendant would not let her go back downstairs, so she returned to the bathroom and sat on a laundry hamper. Defendant came into the bathroom and set the knives on the sink. Defendant walked out of the bathroom, and Massey grabbed the knives as Isaiah came up the stairs to use the bathroom. Defendant, Massey and Isaiah eventually walked down the stairs when Treyquan started calling for his mother.

While Massey sat on the couch and tried to coax Treyquan back to sleep, defendant stood in the living room. While he stood there, he talked about having arrived too early and said that he planned to kill them at 5:30 a.m. Massey then went into the kitchen, found ointment for Isaiah, whose foot ached, and returned to the living room, where she handed the ointment to Isaiah. Defendant continued to say that

he was going to kill them at 5:30. Massey grew worried at this time because it was 5:25 a.m., so she asked defendant to give her a hug. Defendant approached her and, as he wrapped his arms around her, she stabbed him in the neck.

Defendant started to bleed and Massey fell to the floor. The two scuffled in the kitchen, where Massey believed she cut defendant again. Defendant told Massey that he had not really planned on killing her. In fact, he informed her that he still cared about her. She told him to leave and he did. She concluded her testimony by stating that defendant was not a police officer and that he had entered her home without authority. Isaiah testified at trial, largely corroborating his mother's account.

Subsequent investigation of Massey's apartment indicated that defendant had gained entry by removing a kitchen window air conditioner from the outside. Defendant testified and denied the allegations. He stated he was on his morning walk when Massey stabbed him from behind.

Based on the evidence, the jury found defendant guilty as charged.

At the sentencing hearing held August 1, 2003, the court considered a victim impact statement, in which Massey described the fears she and her two sons lived with as a consequence of defendant's conduct in August 2002. Both children were undergoing counseling to help them overcome the trauma of the event. Defendant exercised his right of allocution to ask the court for sentencing lenity. After hearing the parties' sentencing recommendations, the court noted that mitigating factors, including the 20-year-old defendant's lack of a prior criminal record, his difficult childhood and his family circumstances. The court also noted the nature and circumstances of the crime, including the effects of violence and terror on the three victims. The court concluded that a severe sentence was required to protect society. Accordingly, the court imposed a 20-year sentence of imprisonment for home invasion.

Defendant filed a notice of appeal on August 4, 2003, and a motion to reduce sentence on September 3. The trial court ruled that it lacked jurisdiction to consider the postsentencing motion.

On appeal, defendant argues that his sentence should be reduced in consideration of his lack of a criminal history, his youth, his potential for rehabilitation and the circumstances of the offense. He claims that no one other than himself was physically injured as a consequence of his conduct, and he earned his GED in jail awaiting trial. The State argues waiver. In reply, defendant claims plain error.

Even allowing for the Labor Day weekend, defendant's postsentencing motion was filed one day beyond the 30-day limit. 188 Ill. 2d

R. 606(b). Therefore, the State is correct in stating that sentencing issues were waived. *People v. Reed*, 177 Ill. 2d 389, 686 N.E.2d 584 (1997). The plain error doctrine nevertheless permits a reviewing court to reach forfeited errors if (1) the evidence at a sentencing hearing was closely balanced, or (2) the error was so egregious that it deprived the defendant of a fair sentencing hearing. *People v. Hall*, 195 Ill. 2d 1, 743 N.E.2d 126 (2000); see also *People v. Herron*, 215 Ill. 2d 167 (2005).

Here, defendant claims that "the issue is so substantial that it deprived [him] of a fair proceeding." We disagree.

Generally, the trial court is in a better position than this court to fashion a sentence that strikes a proper balance between the need to protect society and the rehabilitation of the defendant. *People v. Payne*, 294 Ill. App. 3d 254, 689 N.E.2d 631 (1998). A sentencing judge is presumed to have considered all relevant factors, including any mitigating evidence, absent a contrary showing in the record. *People v. Back*, 239 Ill. App. 3d 44, 605 N.E.2d 689 (1992). The trial court's sentencing decision may not be altered on review unless the court's discretion is abused (*People v. Cox*, 82 Ill. 2d 268, 412 N.E.2d 541 (1980)) or the sentence constitutes a clear departure from fundamental law or is not proportionate to the offense. *People v. Anderson*, 112 Ill. 2d 39, 490 N.E.2d 1263 (1986). A sentence within the statutory range for the offense generally will not represent a departure from fundamental law. See *People v. Lintz*, 245 Ill. App. 3d 658, 615 N.E.2d 366 (1993).

Based on the foregoing principles of law, defendant is not entitled to a reduction in his 20-year prison sentence. Defendant's conviction of home invasion, a Class X offense, exposed him to a prison term of 6 to 30 years. 730 ILCS 5/5—8—1(a)(3) (West 2002). The record shows that the sentencing judge gave primary consideration to the nature and circumstances of the offense, including defendant's terrorizing of Massey's two small children. The judge also balanced mitigating circumstances against the need to protect society from defendant's conduct. We conclude that the 20-year, midrange sentence imposed was not an abuse of discretion. The trial court committed no error, plain or otherwise.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

LYTTON and O'BRIEN, JJ., concur.