No. 3–08–0618

Filed December 18, 2009

IN THE

APPELLATE COURT OF ILLINOIS

THIRD JUDICIAL DISTRICT

A.D., 2009

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07–DT–1214 |
| JEFFREY I. FAINT, | ) ) | |
| Defendant-Appellant. | ) ) ) | Honorable Edward F. Petka, Judge Presiding. |

JUSTICE WRIGHT delivered the opinion of the court:

After the State concluded its portion of the evidence during a bench trial, the defense moved for a directed verdict. After hearing arguments on the motion, the judge did not make a ruling on the motion but instead pronounced defendant guilty of driving under the influence and then immediately sentenced defendant to a term of supervision. Defense counsel did not object to the trial court's finding of guilt but later raised the trial court's failure to allow defendant an opportunity to present evidence in a posttrial motion. The trial court denied defendant's motion for a new trial. Defendant filed a timely notice of appeal. We reverse and remand for trial.

FACTS

On July 1, 2007, Brian Wojowski, an officer with the New Lenox police department,

issued a uniform Illinois citation and complaint against defendant for the offense of driving under the influence (DUI) in violation of section 11-501(a)(6) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(6) (West 2006)). According to the citation, the offense occurred in the French Fort parking lot located in New Lenox township at 3:05 a.m.

On July 10, 2008, the parties appeared before Judge Petka for a bench trial. Assistant Public Defender Matthew Burtz represented defendant at the trial.

The State called Brian Wojowski to testify. Wojowski testified he served as a police officer with the New Lenox police department in the traffic division. He had been employed as a police officer since June 1995 and had worked at the New Lenox department since 1999. He explained that he received training in DUI arrests for approximately 19 weeks in 1995, attended yearly vehicle code updates, and attended several seminars and classes in the area of field sobriety testing. Further, he received specific training in the determination of persons under the influence of narcotics and worked as "a plain clothes unit in the Chicago Housing Authority" for approximately eight months relating to narcotics interdiction. Wojowski testified that through his training and work experience, he was familiar with the odor of cannabis. Based upon his classes and training, he understood that individuals under the influence of cannabis will exhibit bloodshot or glassy eyes, slowed or drawn speech, droopy eyelids, dilated pupils, and a carefree attitude.

According to Wojowski, on July 1, 2007, he worked the traffic division with the New Lenox police department. At approximately 3 a.m., he drove into the French Fort parking lot in the forest preserve and noticed a vehicle parked in the lot with its headlights off. Wojowski exited his vehicle and approached the driver's side door of the parked vehicle. He observed defendant in the driver's seat of the vehicle with the keys in the ignition and the radio playing.

2

The engine was turned off.

Wojowski noticed "an odor of burnt cannabis or the smell of burnt cannabis emitting from the interior compartment of the vehicle." He asked defendant if he had smoked any cannabis that night. Defendant stated "he last smoked about 8 o'clock in the evening." Wojowski also noticed defendant's "eyes were bloodshot and glassy." Wojowski asked defendant to step out of the vehicle "to perform an eye test on him." Defendant's speech "was somewhat mumbled and slow." Wojowski testified that he asked defendant again if he smoked cannabis, and defendant told him "that he smoked a blunt early in the evening." Wojowski also asked defendant "on a scale of 1 to 10 with 10 being the highest how he felt at the time." Defendant responded, "[a]bout a three or four."

Wojowski said that as he stood outside the vehicle and spoke with defendant, he "smelled the odor of burnt cannabis coming from his breath." The prosecutor asked, "And how much did you smell coming from his breath?" Wojowski answered, "I smelled the odor so it would have to be more than zero." Wojowski said "shortly thereafter," he "placed him [defendant] under arrest for driving under the influence of cannabis."

Wojowski transported defendant to the police station and asked defendant to submit a blood or urine sample. Defendant refused. The prosecutor asked Wojowski if he formed an opinion as to whether defendant was under the influence of cannabis prior to arresting defendant. Wojowski said "[t]hat he was." Wojowski stated that the incident was videotaped but that you "couldn't see the things that I saw in his eyes. It couldn't smell." The State played the videotape for the trial court, and by agreement, the court admitted the videotape into evidence.

The trial court asked the officer if he had an opinion as to "whether or not there was any

3

cannabis that was within either the blood or urine of this individual?" Wojowski responded, "blood or urine, no. I'm not a medical technician. He didn't perform the test, so all I could note was the breath." The State then rested. Defense counsel moved for a directed finding.

The prosecutor argued that the statute prohibits a person from being in physical control of a motor vehicle with any amount of an illegal substance in "their breath, blood or urine." The prosecutor went on to say that the officer stated in regard to cannabis on defendant's breath, there "must have been more than zero because he smelled something." The trial court then questioned the prosecutor about the testimony because the court did not recall the testimony. The trial court asked the prosecutor if she could "recall the witness because the Court did not get that." The prosecutor responded that, "[w]ith regard to the breath, your Honor, I did ask him a question. Do you want me to recall him?" The court said, "I'd like to hear it."

Then, without objection from the defense, the trial court allowed the prosecutor to recall Wojowski as a witness. Wojowski testified that he smelled an odor of cannabis emitting from defendant's breath. The prosecutor asked, "[H]ow much did you smell on his breath?" Wojowski responded that "[i]t was a moderate odor." Shortly thereafter, the trial court asked the officer if he had an "opinion based upon your observation of this individual as to the amount of cannabis that was on the breath of this individual?" and then directed Wojowski to answer "yes or no." Wojowski responded "[y]es." Wojowski stated, "it had to be more than zero zero zero in any measuring format."

When defense counsel began to question Wojowski, the trial court interrupted defense counsel and said, "What's the basis of his opinion, right?" Defense counsel then repeated the question as formulated by the judge. Wojowski responded that the basis of his opinion was

4

"through my career I've smelled the odor of cannabis several [*sic*] several hundred times. I know what the odor smells like, and I smelled that odor coming from Mr. Faint's breath, therefore, it had to be there because I smelled it." Wojowski said "more than zero, zero, zero in any measuring format, whichever format you want to use, there was an odor coming from his breath that I smelled, so it had to be there." Defense counsel asked Wojowski if he was highly confident in his accuracy. Wojowski responded, "as far as the odor of cannabis, yes."

After defense counsel indicated that he did not did not have any further questions, the judge asked:

> "Officer, in those instances where you have detected the smell of
>
> the distinct odor of cannabis, has there ever been any independent
>
> testing that was done of the individual by any means in any one of
>
> those cases which verified to you that there was cannabis present in
>
> the person's blood or in the urine?"

The witness answered "[y]es." Wojowski further stated that such independent testing occurred "[s]everal times with the DUI kits." The court then asked if the amount that was detected was greater than .0001. Wojowski stated "[y]es." After the court's inquiries, the court then excused the witness, without allowing either the prosecutor or defense counsel an opportunity to ask further questions based on the court's inquiries.

The trial court asked the parties if they had any additional argument. Both attorneys indicated that they did not. The judge indicated that he had read *People v. Allen*, 375 Ill. App. 3d 810 (2007), and announced that "there was evidence that was placed in the record in this case which the Court finds to be convincing clear and simply, without contradiction." The trial court

5

observed that the experienced officer's opinions were corroborated in the past with independent testing and found "under those circumstances and under these circumstances *** the State has in fact produced sufficient evidence to convict this defendant beyond all reasonable doubt and that a judgment – or excuse me, a finding of guilty will be entered."

The trial court immediately inquired about defendant's prior driving history. The State responded defendant was eligible for a term of court supervision. The court asked defense counsel if he had "any argument *** other than what the Court has already made." Defense counsel responded, "No, [Y]our Honor."

The trial court announced that it would move on to the sentencing phase even in the absence of a statutorily required evaluation since it believed that the public defender's office would appeal the case. The trial court sentenced defendant to 12 months' supervision and entered a written order.

On July 28, 2008, defendant filed a motion for new trial. In the motion, defendant alleged that the trial court denied defendant's motion for directed finding at the close of the State's evidence and "did not give the Defendant an opportunity to present any evidence." Defendant also alleged that the State failed to prove defendant guilty beyond a reasonable doubt.

On July 31, 2008, the attorneys and defendant appeared before the court for a hearing on defendant's motion for new trial. Defense counsel stated that he filed a motion for new trial to preserve the issue for appeal, but he did not have any further argument. The prosecutor stated that she believed the State proved its case and requested the trial court to deny the defense motion for new trial.

Following these arguments, the trial court stated that it "heard extensive arguments in

6

connection with the guilt finding phase." Further, the trial court stated that it "made extensive findings of fact in connection with this case." The court was "of the opinion that the defendant received a fair trial and that the motion for a new trial be and the same is hereby denied." The trial court entered a written order denying the motion and directing the clerk of the court to file a notice of appeal on defendant's behalf. The clerk of the court filed a notice of appeal on defendant's behalf on August 4, 2008.

ANALYSIS

On appeal, defendant raises two claims of error. First, defendant argues that the State's evidence was insufficient for the trial court to find defendant guilty beyond a reasonable doubt and that defendant's conviction should be reversed and his sentence vacated. The State responds that the evidence established defendant's guilt beyond a reasonable doubt.

Alternatively, defendant argues that he is entitled to a new trial because either a structural error or plain error occurred when the trial court found defendant guilty before allowing defendant an opportunity to present evidence or make a closing argument. The State responds that defendant has waived this error, and plain error does not apply.

The record in this case reveals that defense counsel failed to object when the trial court entered a verdict without ruling on the motion for directed finding, without allowing defendant to present any evidence, and without allowing defense counsel to present a closing argument. The record shows defense counsel did not interrupt the trial court's pronouncement of sentence and punishment when before the trial judge. However, defense counsel did include the fact that defendant was not provided with an opportunity to present evidence in the motion for new trial.

It is well established that in a criminal case, a defendant forfeits review of a claimed error

7

if he does not object at trial and does not raise the issue in a posttrial motion. *People v. Piatkowski,* 225 Ill. 2d 551, 564 (2007). Plain error applies to a forfeited error affecting the substantial rights of a defendant under two circumstances: (1) "where the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence;" and (2) "where the error is so serious that the defendant was denied a substantial right, and thus a fair trial." *People v. Herron,* 215 Ill. 2d 167, 178-79 (2005); *People v. Allen,* 222 Ill. 2d 340, 350 (2006).

A defendant has a constitutional right to a trial including the right to present evidence and a closing argument to the trier of fact. See *Herring v. New York*, 422 U.S. 853, 45 L. Ed. 2d 593, 95 S. Ct. 2550 (1975); *Washington v. Texas*, 388 U.S. 14, 18 L. Ed. 2d 1019, 87 S. Ct. 1920 (1967); *People v. Manion*, 67 Ill. 2d 564 (1977). A trial or hearing involves the formal introduction of evidence and the sworn testimony of parties. *Eckel v. MacNeal*, 256 Ill. App. 3d 292, 297 (1993).

In this case, it would have been very difficult for the defense attorney to remind the judge that the defense should be afforded an opportunity to present evidence and a closing argument because the record conveys a sense that the judge would not have been receptive to defense counsel's suggestion that the approach adopted by the trial court was improper. In the interest of demonstrating respect for the court's procedural preference, this author does not fault defense counsel for refraining from an objection just before the court pronounced a sentence for counsel's client. Counsel adopted a prudent strategy by postponing the confrontation with the judge and electing to set out the error in a written motion for new trial to be considered on another day.

The first prong of the plain error analysis provides "the defendant must show both that

there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him." *People v. Herron,* 215 Ill. 2d at 187. The second prong of the plain error analysis considers whether defendant has demonstrated the error "was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *People v. Herron,* 215 Ill. 2d at 187.

We begin by addressing the second prong of the plain error analysis and the issue of whether the error challenged the fairness and integrity of the trial. Our supreme court has stated, "[w]ithout question" a defendant "has 'the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.'" *People v. Manion*, 67 Ill. 2d at 576, quoting *Washington v. Texas*, 388 U.S. 14, 19, 18 L. Ed. 2d 1019, 1023, 87 S. Ct. 1920, 1923 (1967). Further, the United States Supreme Court has also recognized the importance of closing arguments to the defense. The Court held:

> "It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt. [Citation.
>
> The very premise of our adversary system of criminal justice

9

is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment." *Herring v. New York*, 422 U.S. at 862, 45 L. Ed. 2d at 600, 95 S. Ct. At 2555.

Clearly, the judge did not afford this defendant his fundamental, constitutional right to present evidence. Without evidence, it becomes challenging to present a proper closing argument. It is hard to imagine a better case in which to apply the second prong of a plain error analysis. We cannot have any confidence in the integrity of the court's finding of guilt or the judicial process in this case based on this truncated trial.

Given that we have determined that defendant is entitled to relief based upon the second prong of the plain error analysis, we need not address either the first prong of the analysis or the question of whether the trial court's error constituted a structural error. Further, we cannot address the sufficiency of the State's evidence because the trial was incomplete. At this point, we might consider whether the State's evidence was sufficient to withstand a motion for directed verdict, but the trial court did not rule on that motion. Without a ruling, we have nothing to review with regard to the sufficiency of the evidence.

CONCLUSION

The judgment of the circuit court of Will County is reversed and the cause remanded for a new and complete trial where defendant is allowed to present evidence and a closing argument to

10

the court.

Reversed and remanded.

JUSTICE HOLDRIDGE, specially concurring:

I agree with Justice Schmidt's special concurrence but write separately to elaborate on the point in question. Defense counsel was supposed to be an advocate at trial. However, by offering no objection when the court entirely denied defendant's right to present his case, counsel engaged in no advocacy at all. Moreover, I do not agree that the judge was unreceptive or inflexible. Indeed when a question surfaced about the application of People v. Allen, 375 Ill. App. 3d 810 (2007), the judge displayed flexibility by allowing Officer Wojowski to be recalled for clarification of the evidence. Thus, the record suggests that the judge would have been receptive to a reminder that defendant had a right to proceed once his motion for a directed verdict was ostensibly denied.

JUSTICE SCHMIDT, specially concurring:

I concur in the judgment, but cannot agree with the author that it was somehow prudent for the trial attorney to fail to mention to the trial judge that the judge was denying the defendant his right to put on a case. What could the judge do other than correct himself? Trial work is not for those too timid to speak up in their client's defense. That being said, if finding a defendant guilty at the close of the State's case does not violate the second prong of the plain error analysis, I cannot imagine what would.

11