2016 IL App (1st) 133656

FIRST DIVISION
February 16, 2016

No. 1-13-3656

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 1029 |
| | ) | |
| JOHN JENKINS, | ) | Honorable |
| | ) | William J. Kunkle, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Cunningham and Connors concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, John Jenkins, appeals from his conviction after a jury trial of the felony of resisting or obstructing a police officer.   On appeal, defendant contends his conviction must be reversed and the cause remanded for a new trial where (1) an element of the offense of the felony was never submitted to the jury for a determination beyond a reasonable doubt; (2) the underlying information failed to plead specific facts and the State was allowed to make corrective amendments in the middle of trial; (3) the trial court erred in refusing defense counsel's tendered instructions on the lesser-included offense of reckless conduct; and (4) the trial court failed to properly ensure that the jury would abide by the four principles set forth in Illinois Supreme Court Rule 431(b) (eff. July 1, 2012).   For the following reasons, we reverse defendant's conviction and remand for a new trial.

¶ 2                                    JURISDICTION

¶ 3     The trial court sentenced defendant on September 20, 2013.   Defendant filed a motion to reconsider which was denied on October 30, 2013.   He filed his notice of appeal on November 4, 2013.   Accordingly, this court has jurisdiction pursuant to Article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Oct. 1, 2010) and Rule 606 (eff. Mar. 20, 2009), governing appeals from a final judgment of conviction in a criminal case entered below.

¶ 4                                    BACKGROUND

¶ 5     Defendant was charged by information with one count of aggravated battery of a police officer and one count of resisting or obstructing a police officer, in connection with his arrest on December 13, 2011.   Count I alleged that defendant committed aggravated battery in that he "knowingly caused bodily harm to Police Officer Scott Carter star 7429, to wit: kicked Police Officer Carter star 7429 about the face, and [defendant] knew the individual battered to be a peace officer, while [the officer] was performing his official duties."   Count II alleged that defendant committed the felony offense of resisting or obstructing a peace officer in that he "knowingly resisted or obstructed the performance of Police Officer Scott Carter star 7429, one known to defendant to be a peace officer of any authorized act within his official capacity and was the proximate cause of an injury to said peace officer."   The following are the facts relevant to the determination of this appeal.

¶ 6     At trial, Officer Scott Carter testified that he and his partner, Officer Jayson Torres, were patrolling the streets on December 13, 2011, when they encountered a woman who approached their Chicago police squad car.   They had a conversation with the woman and then she entered the rear passenger side of the squad car.   After making a U-turn they proceeded to the nearby

intersection of 103rd Street and Wentworth Avenue where they saw defendant standing alone on the southeast corner. The squad car pulled up next to him and the officers exited the vehicle while the woman remained in the rear passenger seat.

¶ 7     The officers conducted a field interview with defendant after which they placed him under arrest. At some point the woman exited the squad car and Officer Torres went to her to get more information. Meanwhile, Officer Carter approached defendant to take him into custody. He noticed that defendant seemed upset. As he tried to place defendant's hands behind his back in order to handcuff him, defendant "stiffened his body and he began flailing his arms." Officer Carter stated that defendant also was "dead weight in his stance meaning I would have to do all the work." Officer Carter asked defendant to "stop resisting" but he did not comply.

¶ 8     Since he was unable to place him into custody, Officer Carter "utilized opened and closed hand strikes" which he described as "open palm smacks or fists to the body in order to gain control of a subject that's not complying." Officer Carter testified that he struck defendant "four or five" times but "[i]t had no effect on him." He then "utilized [his] asp stick and gave [defendant] a few strikes to his leg and his thighs" after which Officer Carter was able to place handcuffs on defendant. He described his asp stick as "a metal baton." Officer Carter testified that he struggled to place defendant in the squad car. Officer Torres returned and attempted to help, but Officer Carter felt he had control of the situation and told Officer Torres to return to the woman who was about 30 feet away.

¶ 9     When Officer Carter tried to get defendant into the squad car, defendant "deadened his weight" so that the officer could not get him into the car. Eventually, Officer Carter "was able to push [defendant] and struggle to get him inside the car." Defendant went into the car on his

side and then turned onto his back with his feet "hanging out of the vehicle." Defendant would not put his legs inside the car and "[h]e was kicking at [Officer Carter]." Officer Carter told defendant to put his feet in the car but he did not comply. He stated that defendant kicked at him, and one kick made contact with the right side of his face, underneath his eye and to the right of his nose. Officer Carter believed that defendant might have also kicked his hand because he "had a hand injury. But at the time I wasn't sure if he had bit me or he kicked me because I was bleeding. But he was kicking erratically. So I wasn't sure if his foot had did it [or] his hand or his tooth or whatever." As he was kicking, defendant said, " 'F*** you, bitch. I'm not going to jail. I'm not going anywhere."

¶ 10 To get defendant under control, Officer Carter continued "using closed hand, opened hand strikes" on defendant's chest, arms, and face. He then got into the car with defendant and "used my OC spray" which is a form of pepper spray. Officer Carter testified that he utilized the strikes and the spray after defendant had kicked him. After using the spray, defendant said he was sorry and "I give up." Other officers arrived to assist and defendant was eventually transported from the scene by another unit.

¶ 11 Officer Carter testified that he suffered injuries as a result of defendant's conduct, specifically "a mark on [his] face" that "kind of darkened up." He "had a small headache later on that evening" and there was bleeding on his right ring finger. When asked whether he knew "for sure" how his finger was injured, Officer Carter responded, "No, I don't." He was treated by paramedics at the scene who wiped his finger and dressed it. They also wiped Officer Carter's face with an alcohol pad and told him to get his head checked because "head injuries are serious." He stated that he felt pain on his face, his head was hurting and his hand was bleeding

and numb, but "it wasn't the most serious to me." Officer Carter did not seek further medical attention.

¶ 12 Officer Carter testified that as a Chicago police officer, he received training on the use of force. He stated that the training instructed officers to utilize "de-escalation of force" in these types of situations. He described the method as "[w]hen an offender or somebody you are trying to gain control of, if he escalates force, you escalate force. When they de-escalate, you de-escalate force." Officer Carter was also trained about the effects of the OC spray, which burns the eyes, can cause temporary blindness, and makes breathing difficult.

¶ 13 On cross-examination, Officer Carter acknowledged that in his arrest report and general offense case report, he did not indicate that he OC sprayed defendant after being kicked. The reports also indicate only that Officer Carter was injured on his right hand. Officer Carter stated that he did not go to the hospital right away because he had to process defendant and when the paramedic asked what his pain level was on a scale of one to ten, he said it was "one."

¶ 14 Officer Torres testified that he was working with Officer Carter on December 13, 2011, near 103rd Street and Wentworth Avenue, when a woman flagged them down. After speaking with the woman, she got into the squad car and they made a U-turn. When they saw defendant they stopped and had a conversation with him. Officer Torres then opened the rear passenger door and he and the woman walked about 30 feet away where he obtained more information from her.

¶ 15 Officer Torres returned to the squad car where he observed both Officer Carter and defendant outside of the vehicle, and Officer Carter attempting to put defendant into the vehicle. Officer Torres asked defendant to get inside the car and when he attempted to move him, defendant "deadened his body." Officer Torres then retrieved documents from the trunk of the

squad car and returned to the woman for a final conversation. When he returned to the squad car for the second time, he observed defendant laying on his back in the backseat and Officer Carter "had pretty much stepped out of the patrol car kind of holding his face." He noticed that Officer Carter was putting something back into his belt and overheard him tell dispatch that he deployed his pepper spray. Officer Torres stated that when he went to the squad car the first time, the pepper spray had not yet been deployed.

¶ 16 On cross-examination, Officer Torres stated that he did not see the "spent" can of pepper spray nor did he inventory the can. He stated that he did not see Officer Carter being treated in the ambulance. He testified that when he tried to get defendant into the squad car, he did not notice injuries to defendant's face. He testified that he did not see defendant fighting with Officer Carter nor did he hear Officer Carter call out for assistance while he was getting information from the woman.

¶ 17 The State admitted photographs of defendant and Officer Carter taken after their struggle and then rested. Defendant moved to dismiss count II, arguing that it was fatally defective for failing to specify the act defendant committed in resisting and the act Officer Carter was performing while facing defendant's resistance. The trial court noted that the motion should have been filed prior to trial in order not to "sandbag" the State. Over defendant's objection, the trial court allowed the State to amend the count. The State amended the language to include that defendant flailed his arms and kicked Officer Carter to prevent the officer from handcuffing him and/or from placing defendant into the squad car, authorized acts within Officer Carter's authority. Defendant also moved for a directed verdict as to count I, which the trial court denied.

¶ 18     The defense called paramedic Gerald Root to testify.   Root testified that he and his partner, Jeffrey Thrun, treated Officer Carter on December 13, 2011, at approximately 5:25 p.m. Thrun treated the officer while Root filled out documents.   Root stated that Officer Carter complained of a laceration to his right ring finger and he received basic wound care for that injury.   Officer Carter told them he was not sure how he received the laceration but that he may have been bitten.   He did not want to go to the hospital and signed a refusal form.   Officer Carter told Root that he was not experiencing any pain.   Root stated that he did not recall Officer Carter complaining about being kicked in the face, but acknowledged that the officer could have had a conversation with Thrun about the incident outside of his presence.

¶ 19     Defendant testified in his defense.   He stated that he was 58 years old.   On December 13, 2011, he was socializing with four or five guys near 103rd Street and Wentworth Avenue. A police officer in a car approached and informed him that he was under arrest.   Defendant knew he was speaking to a police officer.   After speaking about 10 minutes, defendant was handcuffed and led to the officer's car.   After the officer opened the door, defendant "was turned around, hit in the face and maced and thrown up in the car."   Defendant "start[ed] hollering and screaming" and he fell backwards into the car.   He testified that he was completely in the car when he was sprayed "and beated repeatedly in the face.   And [defendant] started kicking and screaming."   Defendant did not intentionally kick the officer, but his face was "burning" and "hurting" and he could "see nothing."   The officer told defendant to "get out of the car.   You kicked me."   He "scoot[ed]" out of the car and was hit again.   Defendant stated that he "passed out and woke up in the back of 111th police station."

¶ 20     Defendant was taken for treatment at Roseland Hospital.   When shown photographs taken of him after the encounter, defendant identified his injuries as a bump on his temple, and

cuts on the side of his head, chin, and lip. Defendant denied he had been drinking at the time. In rebuttal, the State called Officer James Delisle who testified that he transported defendant to the police station after the incident and defendant was alert and awake during the transport.

¶ 21    At the jury instructions conference, the State tendered two instructions on resisting or obstructing a police officer and the defense made no objections. People's Instruction No. 11 stated as follows:

"A person commits the offense of resisting or obstructing a peace officer when he knowingly resists or obstructs the performance of any authorized act within the official capacity of one known to him to be a peace officer."

People's Instruction No. 12 stated as follows:

"To sustain the charge of resisting or obstructing a peace officer, the State must prove the following propositions:

*First Proposition*: That Police Officer Scott Carter #7429 was a peace officer; and

*Second Proposition*: That the defendant knew Police Officer Scott Carter #7429 was a peace officer; and

*Third Proposition*: That the defendant knowingly resisted or obstructed the performance by Police Officer Scott Carter #7429 of an authorized act within his official capacity."

¶ 22    Defense counsel sought to tender an instruction on the offense of reckless conduct, but the trial court refused the instruction reasoning that reckless conduct was inconsistent with the defense's theory that defendant unintentionally or reflexively kicked the officer after being sprayed. After closing arguments and deliberations, the jury found defendant not guilty of aggravated battery of a police officer and guilty for resisting or obstructing a police officer.

¶ 23    Defense counsel filed a motion for a new trial, alleging that (1) the court erred in denying defendant's motion to dismiss count II and allowing the State to amend the count in the middle of trial; (2) the court erred in failing to instruct the jury on the offense of reckless conduct; and (3) the State failed to prove defendant guilty beyond a reasonable doubt of the felony of resisting or obstructing where the tendered instruction did not ask the jury to find that defendant proximately caused Officer Carter's injuries.   The trial court heard argument on the motion at the sentencing hearing and denied the motion.   After hearing arguments in aggravation and mitigation, the trial court sentenced defendant to a probation term of two years, with a credit of 648 days for time served in county jail and on electronic home monitoring.   Defense counsel filed a motion to reconsider sentence which the trial court denied.   Defendant filed this timely appeal.

¶ 24                                    ANALYSIS

¶ 25    On appeal, defendant contends that his conviction for the felony of resisting or obstructing an officer must be reversed and remanded for a new trial because the issue of whether defendant proximately caused the officer's injury, the element that elevates the offense from a misdemeanor to a felony, was never submitted to the jury.   Defendant acknowledges that he did not object to the jury instructions given, thus forfeiting review of the issue.   See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (to preserve an issue for review, defendant must object at trial and include the issue in a posttrial motion).   However, under the plain error doctrine this court may consider unpreserved error if "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v.*

*Piatkowski*, 225 Ill. 2d 551, 565 (2007). We must first determine, however, whether error occurred at all. *People v. Herron*, 215 Ill. 2d 167, 184 (2005).

¶ 26      Defendant challenges the instructions on resisting or obstructing a police officer given to the jury. "The purpose of jury instructions is to provide the jury with the correct legal principles applicable to the evidence, so that the jury may reach a correct conclusion according to the law and the evidence." *People v. Bannister*, 232 Ill. 2d 52, 81 (2008). In a criminal case, the trial court must instruct the jury on the elements of the offense, the burden of proof, and the presumption of innocence. *People v. Pierce*, 226 Ill. 2d 470, 475 (2007).

¶ 27      Here, defendant was charged with felony resisting or obstructing the performance of Officer Scott pursuant to section 31-1(a-7) of the Criminal Code of 1961 (Code) (720 ILCS 5/31-1(a-7) (West 2010)). To convict a defendant under section 31-1(a-7), the State must prove beyond a reasonable doubt that defendant knowingly resisted or obstructed an officer in the performance of an authorized act and his violation proximately caused an injury to the officer. 720 ILCS 5/31-1(a), (a-7) (West 2010). Proof of the proximate cause of injury element elevates the conviction from a Class A misdemeanor to a Class 4 felony. *Id*. Although defendant was charged and ultimately convicted of the felony, the instructions given to the jury did not include the proximate cause of injury element. The failure to instruct the jury on an element of the offense was error. *People v. Fonder*, 2013 IL App (3d) 120178, ¶ 22; *Neder v. United States*, 527 U.S. 1, 8 (1999) (error occurred where jury instruction omitted an element of the offense).

¶ 28      We next determine whether the plain error exception to the waiver rule applies. Defendant argues that review is proper under the second prong because the error was grave and affected the fair determination of his case, citing *Fonder*. However, the United States Supreme Court found that where a jury instruction omits an element of the offense, the error "does not

*necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence" and the issue may be subject to harmless error analysis. (Emphasis in the original.) *Neder*, 527 U.S. at 9. See also *People v. Davis*, 233 Ill. 2d 244, 273 (2009) (our supreme court agreed with *Neder*'s determination). Therefore, we will address whether to review this issue as plain error under the first prong.

¶ 29    Under this prong, defendant must show that the evidence was so closely balanced that the error alone threatened to tip the scales of justice against him regardless of the seriousness of the error. *Piatkowski*, 225 Ill. 2d at 565. According to section 31-1(a-7) of the Code, a person is guilty of the Class 4 felony of resisting or obstructing a peace officer if his "violation was the proximate cause of an injury to a peace officer." 720 ILCS 5/31-1(a)(7) (West 2010).

¶ 30    Officer Carter testified that defendant resisted being taken into custody. He struggled to put handcuffs on defendant and "utilized opened and closed hand strikes *** in order to gain control of" defendant. He then used his asp stick, striking defendant a few times on his leg and his thighs after which Officer Carter was able to place handcuffs on defendant. After placing defendant in handcuffs, Officer Carter attempted to get defendant into the squad car. Eventually, he "was able to push [defendant] and struggle to get him inside the car." Defendant went into the car on his side and then turned onto his back with his feet "hanging out of the vehicle." Officer Carter told defendant to put his feet in the car but he did not comply. Instead, defendant kicked at him, and one kick made contact with the right side of his face. Officer Carter believed that defendant might have also kicked his hand because he "had a hand injury. To get defendant under control, Officer Carter continued "using closed hand, opened hand strikes" on defendant's chest, arms, and face. He then got into the car with defendant and

used pepper spray. After using the spray, defendant apologized and gave up. Officer Carter testified that he utilized the strikes and the spray after defendant had kicked him.

¶ 31 Officer Torres testified he observed that initially defendant resisted getting into the squad car. When Officer Torres attempted to move him, defendant "deadened his body." After retrieving documents from the trunk, Officer Torres returned to the woman for a final conversation. When he returned to the squad car a second time, he observed defendant laying on his back in the backseat and Officer Carter "kind of holding his face." He noticed that Officer Carter was putting something back into his belt and overheard him tell dispatch that he deployed his pepper spray. Officer Torres, however, did not see defendant fighting with Officer Carter nor did he hear Officer Carter call out for assistance while he was getting information from the woman.

¶ 32 In his testimony, defendant stated that he was handcuffed and led to the officer's car but he disagreed that he was resisting the arrest. He testified that after the officer opened the door to the squad car, defendant "was turned around, hit in the face and maced and thrown up in the car." He testified that he was completely in the car when he was sprayed "and beated repeatedly in the face." He was kicking and screaming because his face was "burning" and "hurting" and he could "see nothing." The officer told defendant to "get out of the car. You kicked me."

¶ 33 The conflicting testimony at trial shows that in determining whether defendant's kick to Officer Carter's face or hand resulted from his resisting arrest, the factfinder must make a judgment of credibility in favor of either defendant or Officer Carter. Officer Torres did not see defendant fighting with Officer Carter. No other witnesses testified to the incident. Where judgment depends solely on the credibility of witnesses at trial, the evidence is closely balanced.

*People v. Steidl*, 177 Ill. 2d 239, 256 (1997); *People v. Johnson*, 2012 IL App (1st) 091730, ¶ 48. Since defendant has proved that an error occurred and the evidence is closely balanced, prejudice is presumed and reversal of defendant's conviction is required. *Johnson*, 2012 IL App (1st) 091730, ¶¶ 48, 51 (finding that in this situation " '[t]he error is actually prejudicial, not presumptively prejudicial' " (quoting *Herron*, 215 Ill. 2d at 193)).

¶ 34    Due to our disposition of this appeal, we need not consider defendant's remaining contentions.

¶ 35                              CONCLUSION

¶ 36    For the foregoing reasons, the judgment of the circuit court is reversed and the cause remanded for further proceedings.

¶ 37    Reversed and remanded.