2025 IL App (1st) 231607-U

No. 1-23-1607

Order filed January 13, 2025

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 13160 |
| | ) | |
| OLEKSANDR MYRONYUK, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for aggravated driving under the influence of alcohol affirmed where the trial court's recollection of the evidence was supported by the record and reasonable inferences from the evidence. Defendant cannot establish an alternative claim of ineffective assistance of trial counsel where questions on cross-examination elicited testimony already in evidence.

¶ 2    Following a bench trial, defendant Oleksandr Myronyuk was convicted of aggravated driving under the influence of alcohol (625 ILCS 5/11-501(a)(2) (West 2022)) and sentenced to two years of probation. On appeal, defendant contends that the trial court committed plain error

when it mistakenly recalled trial evidence regarding the odor of alcohol. He argues, in the alternative, that his trial counsel was ineffective for failing to preserve the error in the court's recollection and for eliciting testimony on cross-examination about the odor of alcohol. We affirm.

¶ 3     Defendant was charged with one count of aggravated driving under the influence of alcohol.

¶ 4     At trial, Chicago police officer V.M. Pineda testified that about 1:40 a.m. on November 15, 2022, he was on patrol driving a marked police vehicle.[1] At that time, his attention was drawn to a gray or silver BMW that was stopped at the light at the intersection of Hoyne and Chicago Avenues. The BMW was on Hoyne facing southbound despite Hoyne being a northbound one-way street. Pineda observed the BMW turn right to go westbound on Chicago. At that time, he observed the BMW travel over the solid white line that divides the traffic lane from the bus lane on Chicago but did not go into the lane of oncoming traffic. Pineda activated the police vehicle's emergency equipment, and the BMW pulled over to the right. Pineda then exited his vehicle and approached the BMW on the driver's side where he observed defendant in the driver's seat.

¶ 5     At the BMW driver's side door, Pineda engaged in a conversation with defendant. Pineda asked defendant from where he was coming, to which defendant responded he was coming from work. Pineda asked what time defendant finished work, to which defendant responded 6 p.m. or 7 p.m. Pineda further inquired of defendant whether he had been drinking, to which defendant responded that he had been drinking "two beers." Pineda observed defendant to have slow motion, red, bloodshot, "glossy" eyes, and slurred speech, and defendant seemed to be confused while answering questions.

---

[1] Officer Pineda's full name does not appear in the record.

¶ 6 Pineda asked defendant to exit the BMW and walked defendant to the sidewalk to conduct standardized field sobriety tests. Pineda gave defendant instructions on and attempted to conduct the three National Traffic and Highway Safety Administration standardized field sobriety tests, which are the Horizontal Gaze Nystagmus Test (HGN), walk-and-turn test, and the one-leg stand test.

¶ 7 The HGN test is administered by the officer moving a finger in different directions in front of the individual's face and observing the individual to see if they can follow the movements, as well as observing the individual's eyes. During the test, the officer looks for certain "clues," including "maximum deviation, onset prior to 45 degrees, and lack of smooth pursuit." After giving defendant detailed instructions on how to perform the HGN test, Pineda moved his finger in different directions in front of defendant's face, but defendant was not able to follow the finger stimulus and exhibited a "lack of smooth pursuit" in both eyes. Pineda attempted to administer the HGN test on defendant "several" times, repeating the instructions each time, but defendant did not "seem capable or willing" to perform the test, so Pineda proceeded to the walk-and-turn test.

¶ 8 Pineda asked defendant to perform the walk-and-turn test on the street directly behind the BMW. He attempted to read defendant instructions and demonstrate how to perform the test, but defendant continuously interrupted him. Defendant was unable to follow instructions about how to stand. While Pineda was repeatedly demonstrating how to perform the test, defendant kept asking Pineda to "show" him how to do the test. While Pineda asked defendant to perform certain actions during the test, defendant was "not successful at all" in following Pineda's instructions. During the test, defendant told Pineda it was "too cold" for him to keep his balance and asked Pineda to allow him to walk home. Pineda told defendant several times to stand on the white solid

line on the street, but defendant "was stumbling" and "moving [his legs] in a strange manner." Ultimately, Pineda was not able to successfully administer the walk-and-turn test.

¶ 9       Pineda moved on to the one-leg stand test requiring defendant to stand up straight with his feet together and arms out to the side, which defendant could not do. Rather, defendant did "strange" things with his legs, such as trying to stand in "a No. 4 figure with his legs." Defendant told Pineda he could not balance himself because he did not go to "scout school." As a result of defendant's behavior, Pineda could not successfully administer the one-leg stand test.

¶ 10       After these unsuccessful attempts at the field sobriety tests, Pineda concluded that defendant was "too impaired to follow simple instructions, and also too impaired to drive." Pineda formed his opinion based on: (1) his observations of defendant's driving; (2) defendant's statements; (3) his physical observations of defendant; (4) and defendant's inability to follow instructions or perform the field sobriety tests. When Pineda was asked if he "observe[d] any smells that night," he testified, "I did not really smell alcoholic beverage on his breath. It could have been he was probably drinking vodka."

¶ 11       Pineda searched the BMW and found an open bottle of vodka in the back passenger area. The seal was broken, and the bottle was "to some degree emptied." Pineda tried smelling the bottle, but "vodka does not really emit odor." Defendant was arrested and transported to the police station where he refused a breathalyzer test. Pineda was equipped with a body-worn camera and an in-vehicle camera, which were both recording at the time of the incident. Portions of each video were published to the trial court and entered into evidence.

¶ 12       This court has viewed both videos.

¶ 13    In Pineda's in-vehicle video, we observe defendant's vehicle and driving infractions consistent with Pineda's testimony. Pineda's body-worn camera video depicts defendant's vehicle at the intersection of Chicago and Hoyne facing the wrong way on the one-way street and the driving infractions consistent with Pineda's testimony. The conversation between Pineda and defendant at the driver's side door is also recorded. The video is consistent with Pineda's testimony regarding defendant's demeanor, slurred speech, appearance, and inability to responsively answer questions.

¶ 14    Defendant's attempts at the field sobriety tests are also on the video and consistent with Pineda's testimony regarding defendant's difficulty in following instructions. At one point after being asked to keep his feet and toes together before beginning the walk-and-turn test, defendant bends over at the waist to touch his toes with his hands. Before the one-leg stand test, defendant indicates that something is wrong with his feet in that he cannot balance on one foot because he did not go to "scout school."

¶ 15    On cross-examination, Pineda acknowledged that alcohol consumption can raise a person's blood pressure and cause a flushed face, but defendant did not have any redness on his cheeks. Defense counsel inquired of Pineda about an odor of alcohol asking, "in fact, you barely smelled any alcohol on my client's breath; isn't that correct?" Pineda answered, "that's correct." Later, defense counsel questioned Pineda further, "at the time you could not smell any odor of alcohol on his breath; correct?" Pineda responded, "I couldn't really smell too much at all." He stated that the bottle in the vehicle "had a really slight odor of alcoholic beverage." Pineda acknowledged that defendant has a foreign accent.

¶ 16    The trial court found defendant guilty of aggravated driving under the influence of alcohol. The court explained that the testimony of the only witness and the video evidence all show that defendant was driving the wrong way down a one-way street, straddled the traffic lane and bus lane after turning, had red, bloodshot, and glossy eyes, slurred speech, appeared to move in slow motion, was confused while answering questions, admitted to drinking alcohol prior to driving, was completely unable to perform standardized field sobriety tests, and refused a breathalyzer test. The trial court found Pineda's testimony "credible and compelling," and "was backed up by video camera, both from his car and body-worn camera."

¶ 17    Additionally, the trial court stated that upon engaging with defendant, Pineda "smelled some alcohol, not overwhelming." The court continued, Pineda "was very patient and wasn't overstating the case. It wasn't the strongest odor of alcohol, but he did notice something." The court discussed defendant's difficulties with all the field sobriety tests and concluded that "he's purposely doing that to avoid taking the tests because he's concerned about how he would do, or he was too impaired to even understand it." Additionally, the court stated it, "cannot get past the fact he was driving the wrong way on a one-way street. That's telling. And when you put all the rest of it together with an odor of alcohol, and admission of alcohol, and the difficulties he had when being asked to perform field sobriety tests," it found that the State had met its burden of proof.

¶ 18    Defendant filed a motion to reconsider or for a new trial. At the hearing on the motion, defendant's attorney argued that "there was no indication objectively that [defendant] was under the influence of alcohol," despite defendant driving the wrong way down a one-way street, having a "faint odor of alcohol" while speaking with Pineda, and being unable to properly complete field

sobriety tests. The trial court disagreed, noting that there were "a lot of videos in this case." The court referenced that the officer "thought there might [be] some concern about alcohol because of an odor, got him out of the car." The court noted "there was a lot of difficulty with the field sobriety test[s]. He wasn't like falling-down drunk, *** but he *** wasn't following instructions." The court remarked that defendant appeared "quite disoriented in what [it] saw on the tape with the odor of alcohol, and [it was] very concerned about driving the wrong way down the street." The trial court denied the motion.

¶ 19    The court sentenced defendant to two years' probation with the first 180 days to be served in jail, time considered served.

¶ 20    On appeal, defendant first contends that his due process rights were violated where the trial court incorrectly recalled that Officer Pineda testified about smelling an odor of alcohol coming from defendant before ordering him to exit his vehicle and relied upon that mistaken recollection in finding him guilty and denying his posttrial motion for a new trial.

¶ 21    Defendant acknowledges that he did not preserve this issue for our review by failing to object at trial or raising it in his posttrial motion. See *People v. Belknap*, 2014 IL 117094, ¶ 36 (noting that a defendant forfeits an issue by failing to object to the purported error at trial and raise the error in a posttrial motion). He requests this court review his claim as a matter of plain error and ineffective assistance of counsel for failing to preserve the claim of error.

¶ 22    The plain error doctrine is a limited exception to the general forfeiture rule. *People v. Herron*, 215 Ill. 2d 167, 177 (2005); Ill. Supt. Ct. R. 615(a) (eff. Jan. 15, 2024). Under the plain error doctrine, a defendant must show that clear or obvious error occurred, and either (1) the evidence was closely balanced, or (2) the fundamental fairness of his trial was affected by the

error. *People v. Sebby*, 2017 IL 119445, ¶ 48. The defendant bears the burden of persuasion under either prong. *People v. Pacheco*, 2023 IL 127535, ¶ 55. The first question under the plain error doctrine is whether a clear or obvious error occurred. *Id*. Absent reversible error, there can be no plain error. *People v. Cosby*, 231 Ill. 2d 262, 273 (2008). Defendant contends that an error occurred and that both prongs of the plain error doctrine permit this court's review.

¶ 23    A violation of due process will only be found where the record "affirmatively indicates" that the trial court did not accurately recall the testimony or the "crux" of the defense. *People v. Simon*, 2011 IL App (1st) 091197, ¶ 91. In a bench trial, the trial court is presumed to have considered "only competent evidence" in reaching its judgment, unless that presumption is rebutted by "affirmative evidence in the record." *People v. Gilbert*, 68 Ill. 2d 252, 258-59 (1977). We review *de novo* whether the record shows that the trial court made an affirmative mistake in its decision-making process. *People v. Williams*, 2013 IL App (1st) 111116, ¶ 104.

¶ 24    Here, there was no clear or obvious error committed by the trial court because it did not inaccurately recall Pineda's testimony. Pineda was asked on three separate occasions whether he smelled an odor of alcohol coming from defendant, and each time his answer was not an unequivocal "no," meaning the trial court could reasonably infer that Pineda did smell some odor of alcohol on defendant.

¶ 25    First, during direct examination, Pineda was asked about any smell of alcohol coming from defendant during their interaction, to which he replied, "I did not really smell alcoholic beverage on [defendant's] breath. It could have been he was probably drinking vodka." Second, during cross-examination, Pineda was asked, "in fact, you barely smelled any alcohol on my client's breath; isn't that correct?" Pineda answered, "that's correct." Third, later in cross-examination,

Pineda was questioned further, "at the time you could not smell any odor of alcohol on his breath; correct?" Pineda responded, "I couldn't really smell too much at all." The trial court found Pineda's testimony "credible and compelling" and "backed up" by the video evidence.

¶ 26    In this case, Pineda's testimony confirming that he "barely" smelled alcohol or "did not really smell too much [alcohol] at all" is not inconsistent with the trial court's finding that Pineda "notic[ed] something." From Pineda's testimony, the trial court could reasonably infer that Pineda smelled at least some odor of alcohol coming from defendant, however slight. See *People v. Green*, 2017 IL App (1st) 152513, ¶ 102 (stating that the fact finder is entitled to draw reasonable inferences from the evidence presented at trial). In fact, the trial court pointed out during its ruling that, Pineda "wasn't overstating the case. It wasn't the strongest odor of alcohol, but he did notice something." The trial court's finding about a small odor of alcohol, "something," is not affirmatively rebutted by the record. See *Gilbert*, 68 Ill. 2d at 258-59 (the presumption that the trial court only considered competent evidence in reaching its verdict can only be rebutted where the record affirmatively shows the contrary).

¶ 27    Defendant nevertheless contends that the trial court's recitation of Pineda's testimony was positively rebutted by the record because Pineda testified that he could not detect the odor of alcohol on defendant's breath. We do not agree that Pineda made any such categorical statement. We also do not agree with defendant that Pineda's word choice of "really" and the plain meaning of that word connotes that he affirmatively did not smell alcohol, particularly when read in context of his entire testimony. As a result, defendant cannot establish error, much less plain error, and we therefore find there is no basis to excuse the procedural bar of forfeiture. *People v. Naylor*, 229 Ill.

2d 584, 602 (2008). Because there was no error, counsel was not ineffective for failing to preserve the issue. *People v. Jaimes*, 2019 IL App (1st) 142736, ¶ 58.

¶ 28 Alternatively, defendant argues that to the extent that counsel elicited previously unsolicited testimony on cross-examination of Pineda to establish that he smelled an odor of alcohol where he disavowed smelling an odor of alcohol on direct examination, then counsel provided ineffective assistance. Defendant asserts that he was prejudiced by counsel's deficient performance because the trial court expressly stated that the odor of alcohol was a dispositive factor in finding him guilty.

¶ 29 Criminal defendants have a constitutional right to the effective assistance of counsel. *People v. Hale*, 2013 IL 113140, ¶ 15. Courts in Illinois evaluate claims of ineffective assistance of counsel under the two-prong test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Torres*, 2024 IL 129289, ¶ 26. To prevail on a claim of ineffective assistance of counsel under *Strickland*, a defendant must show "(1) that his attorney's representation fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different." *Id.* ¶ 27. A defendant's failure to satisfy either prong of the *Strickland* standard is fatal to his claim of ineffective assistance of counsel. *Id.* We review claims of ineffective assistance of counsel *de novo*. *People v. Webb*, 2023 IL 128957, ¶ 23. We find that defendant's alternative ineffective assistance of counsel claim fails. Here, the record shows that the State had elicited testimony from Pineda about the odor of alcohol on direct examination.

¶ 30 Based on that testimony, defense counsel attempted to have Pineda contradict his prior testimony by clarifying that, "you could not smell any odor of alcohol on his breath; correct?"

Pineda responded, "I couldn't really smell too much at all." Contrary to defendant's alternative assertion, defense counsel did not elicit new incriminating evidence on cross-examination establishing the odor of alcohol.

¶ 31 Moreover, defendant cannot show prejudice where the odor of alcohol was not the dispositive factor, but merely one factor among many that the court considered in finding defendant was under the influence of alcohol. The evidence also showed that defendant was driving the wrong way down a one-way street, turned straddling two lanes of traffic, admitted to drinking alcohol prior to driving, exhibited red, bloodshot, and glossy eyes, spoke with slurred speech, appeared very confused while answering questions, demonstrated an inability to perform field sobriety tests, and refused to take a breathalyzer test. As a result, there is no probability that, but for defense counsel's questions regarding the odor of alcohol, the outcome of the trial would have been different. Defendant's alternative claim of ineffective assistance of counsel fails where he cannot show prejudice. *Torres*, 2024 IL 129289, ¶ 27.

¶ 32 Defendant makes an additional claim of ineffective assistance of counsel in a footnote that while arguing his motion for new trial, his trial counsel should not have stated that "there was just a faint odor of alcohol."[2] However, defendant has failed to establish that but for his counsel's comment, the trial court would have granted a new trial where, as stated, the odor of alcohol was not the dispositive factor in establishing that defendant was under the influence of alcohol. Thus,

---

[2] Defendant references an additional ineffective assistance of counsel claim relating to Pineda's testimony on cross-examination that he smelled a "slight" odor of alcohol coming from the vodka bottle found in defendant's vehicle. Defendant argues, to the extent that this court "may now deem this testimony to be material to any of [defendant's] contentions in any way," counsel was ineffective for eliciting this testimony. We do not find that testimony material and therefore do not address the merits of this contention.

this ineffective assistance of counsel claim fails because he cannot establish he was prejudiced by his counsel's performance. *Id*.

¶ 33    In conclusion, defendant has not established that an error occurred at his trial in the court's consideration of the evidence or that his counsel provided ineffective assistance. Accordingly, we find no basis to disturb the trial court's judgment.

¶ 34    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 35    Affirmed.