NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241193-U

NO. 4-24-1193

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 8, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| BRENT M. DUSCH, | ) | No. 23CF82 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Christopher R. Doscotch, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Presiding Justice Harris and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, holding (1) defense counsel invited any error in the provision of a jury instruction limiting the jury to consideration of other uncharged conduct for the purpose of determining a "pattern of behavior" and (2) counsel did not render ineffective assistance by agreeing to the inclusion of the term "pattern of behavior" where the use of the term was appropriate to describe a pattern of behavior akin to *modus operandi* and was relevant to additional purposes for the evidence other than to show propensity to commit crimes.

¶ 2    Following a jury trial, defendant, Brent M. Dusch, was convicted of two counts of

drug-induced homicide (720 ILCS 5/9-3.3(a) (West 2022)) in connection with the death of

Cassondra Whitman from the combined effect of using methamphetamine, fentanyl, and

clonazepam. During trial, evidence was presented defendant used methamphetamine and other

drugs on occasions other than the day of Whitman's death, previously delivered

methamphetamine to Whitman, and had used drugs laced with fentanyl a few days before

Whitman's death. With defense counsel's agreement, the jury was instructed it could consider defendant's involvement in conduct other than that charged in the indictment for the limited purpose of determining identification, intent, motive, common design, and a "pattern of behavior."

¶ 3 On appeal, defendant contends the trial court erred in including the term "pattern of behavior" in the instruction because doing so wrongly allowed the jury to consider the evidence as establishing a propensity to commit crimes. In the alternative, he argues counsel rendered ineffective assistance by agreeing to the instruction.

¶ 4 We determine defense counsel forfeited the issue by agreeing to the instruction at trial. We further determine counsel did not render ineffective assistance by doing so. The term "pattern of behavior" was appropriate as a term akin to the permissible term "*modus operandi*" to describe the use of the evidence and was relevant to additional purposes for the evidence other than to show propensity to commit crimes. Accordingly, we affirm.

¶ 5 I. BACKGROUND

¶ 6 In February 2023, defendant was charged with two counts of drug-induced homicide (*id.*). Count I alleged defendant knowingly delivered fentanyl to Whitman and her use of it caused her death. Count II alleged defendant knowingly delivered methamphetamine to Whitman and her use of it caused her death. In June 2024, a jury trial was held.

¶ 7 A. Trial Evidence

¶ 8 Evidence at trial showed Whitman had a history of drug use, with heroin being her drug of choice. Whitman was found dead, lying on her bed in her apartment, at around 10 p.m. on March 17, 2022. Whitman's body was cold to the touch when discovered. There was evidence Whitman's dog was running loose outside the apartment in the afternoon or evening.

Whitman's phone missed an incoming Facebook Messenger call from defendant at 5:53 p.m. There were a number of other missed incoming calls to Whitman's phone during the day and evening.

¶ 9 Amanda Youmans, the forensic pathologist who performed the autopsy, opined Whitman died from the combined effect of methamphetamine, fentanyl, and clonazepam, a drug Whitman had been previously prescribed. Whitman had fresh track marks associated with injecting drugs that likely occurred within 24 hours of her death, although it was not possible to give an exact time.

¶ 10 Youmans testified there was no evidence anyone performed cardiopulmonary resuscitation (CPR) on Whitman. She stated she would have been able to discover signs of CPR during the autopsy if CPR compressions had been done correctly. Toxicology testing showed Whitman's system did not contain Narcan, which can reverse the effect of opioids like fentanyl. There also was no evidence of Narcan having been injected into Whitman's leg.

¶ 11 Anthony Fisher testified he was a detective at the time of Whitman's death and investigated the case. No evidence of clonazepam was found inside the apartment. In addition, no illegal drugs, drug paraphernalia, or Narcan were found in the apartment. On cross-examination, Fisher admitted he did not collect a plastic bag that was partially sticking out from underneath a dresser shown in a photo taken by an officer. Fisher stated he had not noticed it before. Whitman's cell phone was also recovered.

¶ 12 An examination of data from Whitman's cell phone showed a photo taken on her phone early in the morning on March 17, 2022, depicting a plastic bag containing a whitish-yellow substance. Fisher testified the packaging was consistent with it being drugs. However, the substance could not be identified based solely on the photo. Data from the cell

phone showed Whitman later called defendant.

¶ 13    The State presented evidence defendant arrived at Whitman's apartment at around 8:30 a.m. and stayed until approximately 2 p.m. on March 17, 2022. Defendant was picked up outside Whitman's apartment by Robin Olson, his girlfriend, and Jeremy Johnson at about 2 p.m.

¶ 14    Johnson testified he was a lifelong drug user. He was in prison at the time of his testimony for theft. Johnson said he was testifying because it was "the right thing to do." However, he acknowledged he had asked a police officer to help him get out of his pending theft case and to help his girlfriend with a pending case for driving without a valid license. Neither of them ended up receiving any benefit in exchange for Johnson's testimony.

¶ 15    Johnson stated when he picked up defendant at Whitman's apartment, defendant said he wanted to "get out of there," without elaborating. Later that day, while Johnson and defendant were using drugs at Johnson's residence, defendant said he and Whitman had both overdosed on "shit" he brought over to her place and Whitman was unresponsive when defendant woke up. Defendant said he was really worried about being arrested for it. Johnson testified he knew the word "shit" meant heroin because he knew defendant's drug habit and had witnessed defendant use heroin before. The trial court then instructed the jury any testimony regarding defendant using heroin was for the sole purpose of explaining what Johnson meant by stating he knew what defendant was talking about.

¶ 16    Johnson testified defendant gave Whitman "a little bit of dope" in exchange for a cell phone about a week before her death. Defendant then sold that phone to Johnson for $20. Johnson also testified he got a call from Olson several days before Whitman's death saying someone was overdosing. Johnson went to defendant's residence and described defendant as

- 4 -

"really messed up," "in bad shape," and "not making a whole lot of sense." When defendant came out of that state, he said, "watch out for this because it's got fentanyl in it. Got to be careful with it. Don't do too much."

¶ 17    Defense counsel later moved for a mistrial, arguing Johnson's testimony about defendant's drug use in the days leading up to Whitman's death was improperly being used to show propensity to commit crimes. Counsel noted the evidence could also be introduced when relevant to show, among other things, motive, intent, identity, absence of mistake or accident, *modus operandi*, or the existence of a common plan or design but argued it was more prejudicial than probative. The State argued the evidence was not being offered to show defendant was "a bad guy," and instead it linked the drugs defendant had to Whitman's death. The State noted it would be providing a limiting instruction on the matter. The trial court denied the motion.

¶ 18    The parties stipulated defendant was housed in the same unit as Jason Rushton at the Tazewell County jail for about a week in late July 2023. Rushton testified he and a fellow inmate, Christopher Parr, spoke with defendant about why defendant was in jail. According to Rushton, defendant said he was in jail for drug-induced homicide because he had given a girl fentanyl that killed her. Rushton testified defendant said he knew it was fentanyl because he had tested it, but the girl did not know that and instead thought it was heroin. Defendant also said the girl was someone he had "dealt with," or given drugs to, before.

¶ 19    Rushton testified he made a request to speak with the police to provide information about his conversation with defendant because he knew people who used drugs, including his daughter, and he did not want defendant to sell it to anyone else. However, he also acknowledged he mentioned getting a bond reduction to an officer but said he did not ultimately get any such reduction. He also acknowledged there was a contempt case against him. He

testified he was not promised any benefit in the contempt case based on his testimony.

¶ 20 Parr testified the jail conversation between himself, Rushton, and defendant never happened. He stated he did not hear defendant discuss any details of his case at any time.

¶ 21 Detective Fisher interviewed defendant on August 30, 2022. In a video of the interview, defendant said he and Whitman were friends and he went to her apartment on the day of her death to use drugs. Defendant initially said they used heroin. Defendant told Fisher Whitman already had the drugs there. He later said Whitman used heroin, while he used methamphetamine. Defendant said he was already high when he got there and he was falling asleep or passing out while there. He thought Whitman used the drugs a couple of times, but he was not sure. He also said he did not actually see Whitman use drugs, but he could tell she was high. Defendant said he was not aware of Whitman using anything other than heroin. Defendant told Fisher he woke up and observed signs Whitman was overdosing. He stated he gave Whitman Narcan and performed CPR. Defendant said Whitman was fine when he left that afternoon.

¶ 22 On February 1, 2023, Fisher interviewed defendant again. During the interview, defendant said he went to Whitman's apartment on the day of her death to trade drugs. When asked what they planned on trading, defendant said he was going to give Whitman methamphetamine and she would give him heroin. However, defendant also said he did not like heroin and he generally used methamphetamine. Defendant then contradicted himself and said he was going to give Whitman heroin and she would give him methamphetamine. Defendant said he ultimately did not give Whitman anything because she was already high when he got there. Defendant told Fisher he gave Whitman CPR and injected Narcan in her leg and she was fine when he left.

¶ 23    Defendant told Fisher he had never heard of anyone dying from methamphetamine. When Fisher told defendant Whitman died from a combination of methamphetamine and fentanyl, defendant said he did not know what that was. Fisher asked why Whitman had no heroin in her system, and defendant replied it was probably fentanyl that caused Whitman's death, but it was not from what he gave her.

¶ 24    Defendant testified and denied bringing any controlled substances to Whitman's apartment. Instead, he stated he led Whitman to believe he would bring heroin because that was her drug of choice and he wanted her to let him come over so he could use her methamphetamine. Defendant testified Whitman was already high when he arrived. He stated they both used methamphetamine provided by Whitman, although he did not actually observe her use it. Defendant admitted he had given Whitman methamphetamine in the past. He testified Whitman did not like methamphetamine, but she used it sometimes, just as he sometimes used heroin.

¶ 25    When asked to explain why some of his testimony differed from some of his statements to police, defendant testified he was not in his "right state of mind" during his interviews with police because he had been "up for days" and was "still coming off drugs." He also testified his memory was poor because of drug use. He said he had been using drugs before both his first and second interviews with Fisher.

¶ 26    Defendant denied speaking with Rushton while they were in jail. Defendant said he never told Johnson he gave Whitman fentanyl. Defendant did not remember any occasion before Whitman's death when he told Johnson after coming out of an overdose, to be careful because the drugs he had taken contained fentanyl. However, he agreed that could have happened. Defendant admitted he got a cell phone from Whitman to give to Johnson but denied

giving Whitman drugs in exchange for it.

¶ 27        The State presented rebuttal evidence showing defendant was booked into jail the day before his first interview with Fisher and was in custody for over two days before his second interview. The State also presented evidence an intake officer noted defendant did not display any signs of being under the influence of any substances at the time of his arrest.

¶ 28                                B. Jury Instructions

¶ 29        During a jury instruction conference, the State offered an instruction based on Illinois Pattern Jury Instructions, Criminal, No. 3.14 (approved Oct. 17, 2014) (hereinafter IPI Criminal No. 3.14), stating:

>        "Evidence has been received that the defendant has been involved in conduct other than that charged in the indictment.
>
>        This evidence has been received on the issues of the defendant's identification, intent, motive, common design, and pattern of behavior and may be considered by you only for that limited purpose.
>
>        It is for you to determine whether the defendant was involved in that conduct and, if so, what weight should be given to this evidence on the issues of identification, intent, motive, common design, and pattern of behavior."

¶ 30        The trial court asked if defense counsel wanted the instruction, and defense counsel twice said, "No objection." The court inquired about identification, and the State mentioned each of the limited purposes for the evidence listed in the proposed instruction, including "pattern of behavior." The State noted some of the limited purposes overlapped to some extent. Defense counsel stated, "I don't have a problem with the instruction." The State said, "[Defense counsel] isn't objecting to any of those specific ones, I think we're all right."

Defense counsel responded, "[T]hat doesn't make a difference to me." The court gave the instruction to the jury.

¶ 31                    C. Conviction and Posttrial Proceedings

¶ 32          The jury found defendant guilty on both counts. Defense counsel filed a posttrial motion, challenging in part the admissibility of evidence of other uncharged conduct. However, the motion did not raise any issue with the jury instructions. The trial court denied the motion.

¶ 33          The trial court merged count I with count II and sentenced defendant only on count II based on the delivery of methamphetamine. The court sentenced defendant to 24 years' imprisonment and denied his motion to reconsider sentence.

¶ 34          This appeal followed.

¶ 35                              II. ANALYSIS

¶ 36          On appeal, defendant contends the trial court erred by instructing the jury it could consider evidence of other uncharged conduct for the purpose of determining defendant's "pattern of behavior." In the alternative, he argues counsel rendered ineffective assistance by agreeing to the instruction.

¶ 37                              A. Forfeiture

¶ 38          We first note defendant forfeited any issue concerning the jury instruction.

¶ 39          Under the invited-error doctrine, a party cannot complain of error it brought about or participated in. *People v. Villarreal*, 198 Ill. 2d 209, 227-28 (2001). Our supreme court "has recognized that 'a defendant forfeits review of any putative jury instruction error if the defendant does not object to the instruction or offer an alternative instruction at trial and does not raise the instruction issue in a posttrial motion.' " *People v. Patrick*, 233 Ill. 2d 62, 76 (2009) (quoting *People v. Herron*, 215 Ill. 2d 167, 175 (2005)). The forfeiture principle encourages the defendant

to raise issues before the trial court, allowing the court to correct its own errors before the instructions are given, and thus disallowing the defendant to obtain a reversal through inaction. *Herron*, 215 Ill. 2d at 175.

¶ 40        Moreover, when a defendant procures or invites an error, the defendant may not raise on appeal the error that he or she invited in the trial court, as plain error or otherwise. *People v. Harvey*, 211 Ill. 2d 368, 386 (2004). Thus, when defense counsel affirmatively acquiesces to actions taken by the trial court, a defendant's only challenge that may be presented is a claim for ineffective assistance of counsel. *People v. Bowens*, 407 Ill. App. 3d 1094, 1101 (2011).

¶ 41        Here, because defense counsel affirmatively acquiesced to the instruction, under the invited-error doctrine, defendant cannot object to the instruction on appeal. Instead, defendant's challenge may only be presented as a claim for ineffective assistance of counsel.

¶ 42                    B. Ineffective Assistance of Counsel

¶ 43        Defendant next argues ineffective assistance of counsel based on counsel's agreement to the instruction.

¶ 44        "To demonstrate ineffective assistance of counsel, a defendant must show that (1) the attorney's performance fell below an objective standard of reasonableness and (2) the attorney's deficient performance prejudiced the defendant in that, absent counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *People v. Jackson*, 2020 IL 124112, ¶ 90 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "A reasonable probability is a probability which undermines confidence in the outcome of the trial." *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 84. "Because the defendant must satisfy both prongs of this test, the failure to establish either is fatal to the claim." *Jackson*,

2020 IL 124112, ¶ 90 (citing *Strickland*, 466 U.S. at 697).

¶ 45        "The purpose of jury instructions is to provide the jury with correct legal principles that apply to the evidence, thus enabling the jury to reach a proper conclusion based on the applicable law and the evidence presented in a case." *People v. Jackson*, 331 Ill. App. 3d 279, 290 (2002). Evidence of other crimes committed by a defendant is not admissible if its relevancy is limited merely to establishing a propensity to commit crime. *People v. Kliner*, 185 Ill. 2d 81, 146 (1998). However, admission of such evidence may be permitted "where relevant to prove any material question other than the defendant's propensity to commit crime, including *modus operandi*, intent, identity, motive, or absence of mistake." *Id.* Thus, "[a] limiting instruction is proper where evidence is admissible for one purpose, such as proving intent or knowledge, but not another, such as demonstrating propensity." *People v. Spates*, 2025 IL App (4th) 240954-U, ¶ 36.

¶ 46        Here, the trial court instructed the jury on the issue of "pattern of behavior" using IPI Criminal No. 3.14, which provides the following:

¶ 47                      "3.14

Proof Of Other Offenses Or Conduct

[1] Evidence has been received that the defendant[s] [(has) (have)] been involved in [(an offense) (offenses) (conduct)] other than [(that) (those)] charged in the [(indictment) (information) (complaint)].

[2] This evidence has been received on the issue[s] of the [(defendant's) (defendants')] [(identification) (presence) (intent) (motive) (design) (knowledge) (_____)] and may be considered by you only for that limited purpose.

[3] It is for you to determine [whether the defendant[s] [(was) (were)]

- 11 -

involved in [(that) (those)] [(offense) (offenses) (conduct)] and, if so,] what weight should be given to this evidence of the issue[s] of _____."

¶ 48     While IPI Criminal No. 3.14 does not incorporate the term "pattern of behavior," it provides blanks where any number of terms that are unspecified by the instruction may be injected. *Jackson*, 331 Ill. App. 3d at 290. The committee note to IPI Criminal 3.14 states, "If the court concludes that none of the specific alternatives provided in paragraph [2] of this instruction fits the facts of the case before it, then the court should set forth in the blank in this instruction whatever explanation does fit the evidence." IPI Criminal No. 3.14, Committee Note (approved Oct. 17, 2014).

¶ 49     Defendant essentially contends "pattern of behavior" is the same as "propensity," making it improper for the trial court to use the term in IPI Criminal No. 3.14. We disagree. Instead, we view the term "pattern of behavior" as used here as a term akin to *modus operandi*.

¶ 50     *Modus operandi*, or " 'method of working,' " refers to a pattern of criminal behavior so distinct that separate crimes can be recognized as the work of the same person, such as where the crimes involved possess common peculiar distinctive features so as to earmark both crimes as the handiwork of the defendant. *People v. Kimbrough*, 138 Ill. App. 3d 481, 486-87 (1985). While *modus operandi* is not included among the list of evidence of other criminal conduct admissible for a limited purpose in IPI Criminal No. 3.14, it is admissible for such a purpose and may be inserted in the blank provided in the instruction. See *Jackson*, 331 Ill. App. 3d at 291. However, because it is a Latin term, it has been held the term "*modus operandi*" should not be inserted without defining the term for the jury. *Id.*

¶ 51     Here, the evidence showed a pattern of behavior consisting of the distinctive features of defendant using methamphetamine and heroin, including the use of drugs laced with

- 12 -

fentanyl, and previously delivering methamphetamine to Whitman. Those features were consistent with the crimes charged. Thus, the evidence was relevant to show a pattern of behavior akin to *modus operandi* and was not used to show a general propensity to commit crimes. By using the term "pattern of behavior," the instruction also avoided use of a Latin term and was tailored to address the unique facts of the case, in which defendant's behavior was akin to *modus operandi* but perhaps not so distinctive as to perfectly fit the definition of it.

¶ 52 Further, defendant's pattern of behavior was relevant to show other purposes listed in the instruction. For example, the pattern of behavior was relevant to defendant's identification as the person who gave Whitman drugs containing fentanyl on the day she died.

¶ 53 Notably, the State also specifically told the trial court it was not using the evidence to show defendant was a bad person, and defendant does not challenge the admissibility of the evidence on appeal. Given the evidence was admitted, it was proper for the court to place a limiting instruction on it, and the use of the term "pattern of behavior" best described its use. Accordingly, defendant has not shown deficient representation by counsel since the instruction appropriately included the term.

¶ 54 Because we find defendant has not shown counsel's representation was deficient, we need not address prejudice. However, we note, while the State's case was not perfect, the evidence against defendant was strong. Thus, even if we were to find error, we would be hard-pressed to find there was a reasonable probability the result of the proceeding would have been different had the jury instruction not included the term "pattern of behavior."

¶ 55                                   III. CONCLUSION

¶ 56 For the reasons stated, the judgment of the trial court is affirmed.

¶ 57 Affirmed.

- 13 -