**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 240436-U

Order filed March 20, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal No. 3-24-0436 Circuit No. 22-CF-2289 |
| GUILLERMO NAVA OLIVER, | ) ) | Honorable Margaret M. O'Connell, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Presiding Justice Hettel and Justice Davenport concurred in the judgment.
_____

**ORDER**

¶ 1    *Held*:  Trial counsel provided ineffective assistance where he failed to object to erroneous jury instructions.

¶ 2    The defendant, Guillermo Nava Oliver, appeals from his conviction for retail theft. The defendant argues that (1) he was deprived of effective assistance where defense counsel failed to object to erroneous and confusing jury instructions, (2) the Du Page County circuit court erred in barring him from presenting evidence of his codefendant's consciousness of guilt, and (3) the court

erred in refusing to consider the available disposition of second chance probation because he exercised his right to a jury trial.

¶ 3                                    I. BACKGROUND

¶ 4        On December 6, 2022, the defendant was indicted for retail theft (720 ILCS 5/16-25(a)(1) (West 2022)), alleging that on October 23, 2022, he and his codefendant, Paul Jiminez, knowingly took possession of merchandise, valued in excess of $300, offered for sale at Nordstrom, "with the intention of depriving *** Nordstrom, permanently of the possession, use or benefit of the merchandise without paying the full retail value."

¶ 5        Prior to trial, the defendant filed a motion seeking, in relevant part, to admit evidence that Jiminez furnished a false name to asset protection officers following the incident. The defendant argued that Jiminez was responsible for the criminal act and their conduct upon being apprehended, and Jiminez's lies and the defendant's cooperation was relevant to illustrate that they were not acting in concert with each other. The State proffered that, at trial, the asset protection officers would testify that the defendant and Jiminez both selected items from a shelf, placed them into a bag that the defendant was holding, and left the store. The court denied the defendant's motion finding that Jiminez providing a false name to officers was not relevant or probative.

¶ 6        The case proceeded to jury trial on March 19, 2024. The court read the charge to prospective jurors, mirroring the language of the indictment. Nordstrom asset protection officer Mark Wiggins testified that, on October 23, 2022, he was in the asset protection office when he received information about two men in the men's fragrance department. He located the two men, later determined to be Jiminez and the defendant, on the store surveillance cameras. Wiggins observed the men acting dismissive of customer service associates who approached them. He indicated that Jiminez selected two bottles of cologne and the defendant selected one bottle of

2

cologne. He explained that when the men were selecting the items, they were not very observant of the price tags and "just kind of grabbing" them. Wiggins testified that these behaviors are indicators that someone may be shoplifting.

¶ 7 After they took the bottles of cologne, Jiminez and the defendant walked to the men's sportswear department. Wiggins stated that they remained close to one another as they walked side by side through the store. Jiminez concealed his bottles in a white Nordstrom bag that he was holding. The defendant handed his bottle to Jiminez who placed it inside the bag. Wiggins then observed them walk toward the exit. They passed several cash registers without paying and exited the store. The defendant and Jiminez were brought to the asset protection office. A search of Jiminez's bag revealed the three bottles of cologne, valued at approximately $579.

¶ 8 In Wiggins's written report of the incident, he indicated that he was informed by a sales associate that Jiminez and the defendant were "refusing service." At that point, he located them on the surveillance camera at the fragrance counter selecting the bottles of cologne. He admitted that the report made no mention of any personal observations of walking away from associates or disregarding price tags. Wiggins indicated that the defendant did have a wallet in his possession.

¶ 9 Carlos Ortiz, an assistant asset protection manager at Nordstrom, testified that he was conducting floor surveillance on October 23, 2022, with his manager Osiris Chaney. They received a report regarding two men acting suspiciously in the men's fragrance department. When they arrived, Ortiz observed the defendant holding a bottle of cologne and Jiminez holding two bottles of cologne and a white Nordstrom bag. Ortiz stated that he observed the defendant making furtive eye movements, seeming more concerned about his surroundings than the merchandise he was selecting. He also indicated that the defendant appeared to select the bottle of cologne without regard for its price or size. Eventually, the defendant and Jiminez left the fragrance department

3

and went to the men's sportswear department. The defendant was walking behind Jiminez. Ortiz observed Jiminez put his two bottles of cologne into the bag he was carrying. Jiminez turned around and the defendant handed him the bottle that he was holding. Jiminez placed that bottle in his bag. After the bottles were concealed, they exited the building without attempting to pay for the merchandise. Ortiz stopped them and escorted them to the asset protection office where a search revealed a Barbie doll and three bottles of cologne in Jiminez's bag. Ortiz did not prepare a report in connection with this incident. Ortiz testified that he had disclosed his observations of furtive eye movements and disregarding size and price to the state's attorney's office, but the parties stipulated that Ortiz did not disclose any such observations during trial preparation.

¶ 10    Chaney testified similarly to Ortiz. He indicated that he did not observe the defendant looking at any clothing in the sportswear department. Chaney also stated that the defendant was compliant and cooperative upon being brought back inside the store.

¶ 11    The defendant testified that on October 23, 2022, he went to Nordstrom with an employee of his father, Jiminez. The defendant was shopping for himself and his family. While at Nordstrom, the defendant went to the men's fragrance department and selected a cologne. The defendant gave the bottle that he selected to Jiminez because Jiminez told him that he would purchase the cologne for him. The defendant indicated that he and Jiminez separated after he handed Jiminez the bottle. The defendant began to look at clothing in the sportswear department. The defendant saw Jiminez heading toward the exit, so he began to follow him. He did not see what Jiminez did while they were separated. The defendant stated that he had his wallet with him which contained $661 and two credit cards. He did not know that Jiminez intended to steal the bottles of cologne.

¶ 12    The jury was instructed that:

4

"A person commits the offense of retail theft when he or one for whose conduct he is legally responsible knowingly takes possession of any merchandise displayed for sale in a retail mercantile establishment with the intention of retaining such merchandise without paying the full retail value of such merchandise and the value of the property exceeds $300."

Further, the propositions provided to the jury, by both the court and the State, stated, in relevant part, "To sustain the charge of retail theft, the State must prove [t]hat the defendant, or one for whose conduct he is legally responsible, intended to retain the merchandise ***."

¶ 13    During deliberations, the jurors sent a note stating: "Does 'retain' refer to either purchasing the goods or stealing the goods." The court informed the jury that it was in possession of all the relevant law and instructed them to continue deliberating. A second note read: "We are at an impass[e]! Extra time will not help tonight. We have 2 members who have responsibilities to care for others ***." The court instructed the jurors to continue deliberating. Eventually, the jury found the defendant guilty. The defendant was sentenced to 12 months' probation. The defendant appealed.

¶ 14                                    II. ANALYSIS

¶ 15    The defendant first argues on appeal that he was provided ineffective assistance where defense counsel failed to object to the usage of a proposed jury instruction which did not reflect the indictment, was confusing, and did not contain an element of the offense. The defendant asserts that counsel's deficient performance prejudiced him where the evidence was closely balanced and the record reflects confusion from the jurors.

¶ 16    "Every defendant has a constitutional right to the effective assistance of counsel under the sixth amendment to the United States Constitution and the Constitution of Illinois." *People v.*

*Domagala*, 2013 IL 113688, ¶ 36. Claims of ineffective assistance of counsel are measured against the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on a claim of ineffective assistance, the defendant must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced the defendant. *Id.* To establish prejudice, a defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Prejudice may be found in cases where the chance of acquittal is less than 50% provided that a finding of not guilty would not be unreasonable. *People v. Lucious*, 2016 IL App (1st) 141127, ¶ 45.

¶ 17         "The function of jury instructions is to convey to the jury the law that applies to the evidence presented." *People v. Herron*, 215 Ill. 2d 167, 187 (2005). Here, the instructions provided to the jurors asked them to determine whether the defendant retained the merchandise. These instructions do not reflect the charge against the defendant that he intended to permanently deprive the merchant of the items. The State concedes, and we agree, that defense counsel's performance was deficient in failing to object to the instructions.

¶ 18         The State argues that the erroneous jury instructions did not prejudice the defendant because the evidence presented at trial showed that the defendant and Jiminez took the cologne intending to deprive Nordstrom of the items without paying the retail price. Based on this, the State contends that no reasonable probability exists that the verdict would be different with the correct instructions.

¶ 19         Wiggins and Ortiz observed the defendant select one bottle of cologne and Jiminez select two bottles. Wiggins testified that the defendant and Jiminez walked side by side to the men's

6

sportswear department. Jiminez placed his bottles inside a bag he was carrying. The defendant handed Jiminez his bottle which was subsequently placed inside the same bag. They walked past several registers and exited the store without attempting to pay. Ortiz indicated that upon going to the sportswear department, the defendant walked behind Jiminez. Jiminez turned around to collect the defendant's bottle of cologne and placed it in his bag. After concealing the bottles, they walked toward the exit, passing several registers without paying. Both Wiggins and Ortiz testified to observations that were not disclosed in either reports or trial preparation.

¶ 20     The defendant admitted that he selected a bottle of cologne and handed it to Jiminez. However, he indicated that Jiminez had offered to purchase the bottle for him, and he did not know that Jiminez intended to steal it. The defendant was carrying enough money in his wallet to cover the cost of the cologne he selected.

¶ 21     It is the responsibility of the jury to determine the credibility of the witness, weigh the evidence, and resolve any conflicts in the testimony. *People v. Gray*, 2017 IL 120958, ¶ 35. However, due to the confusing nature of the instructions, we cannot say that the jury necessarily rejected the defendant's testimony and determined the asset protection officers to be more credible. The jurors were asked to determine whether the defendant retained merchandise rather than intended to permanently deprive Nordstrom of the cologne without paying full retail value. The record demonstrates that the jurors were confused about what retention entailed, contemplating that it could encompass an intent to purchase the item. Had the jurors been correctly instructed as to the elements of the charge against the defendant, a reasonable probability exists that the outcome would have been different. Accordingly, we reverse the defendant's conviction and remand for further proceedings.

¶ 22 Because we have reversed and remanded for further proceedings, we need not address the defendant's remaining issues. However, since the issue is likely to recur on remand, we note that the facts presented to the court at the hearing to admit evidence regarding Jiminez furnishing a false name to asset protection officers were contrary to the evidence presented at trial. The trial evidence established that the items were concealed by Jiminez in Jiminez's bag, not a bag in the defendant's possession. Thus, the court relied on incorrect facts, unsupported by the record, when concluding that the requested evidence was irrelevant. Where the contested question at trial is whether the defendant and Jiminez both possessed the requisite intent to permanently deprive Nordstrom of the value of the cologne, both individuals' behavior and interactions with asset protection officers are relevant and probative.

¶ 23                                    III. CONCLUSION

¶ 24 The judgment of the circuit court of Du Page County is reversed and remanded for further proceedings.

¶ 25 Reversed and remanded.